COMMONWEALTH *vs.* FRANK S. McDERMOTT.

Middlesex.    March 8, 1926. — May 25, 1926.

Present: BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Conspiracy. Larceny. Practice, Criminal,* Cross-examination of witness,
Exceptions. *Evidence,* To refresh recollection, Competency, Declara-
tions and acts of coconspirator. *Witness,* Cross-examination.

At the trial of an indictment, rulings by the trial judge excluding questions,
asked in cross-examination of witnesses for the Commonwealth and
intending to elicit testimony affecting the credibility of the witnesses
by showing pleas of guilty to indictments which contained charges of
which they were ignorant, or items inconsistent with testimony given
upon the stand, were *held* not to have shown an abuse of the discre-
tionary power of the judge to control cross-examination, although the
evidence sought to be brought out was not absolutely immaterial.

It is the rule in this Commonwealth that any paper which in fact refreshes
the memory of a witness may be used by him for that purpose, and it
is immaterial that the paper is not contemporaneous with the event it
records, or that it was not made by the witness.

In order for the declarations of one conspirator to be admitted in evidence
for the Commonwealth at the trial of an indictment against a cocon-
spirator, it must appear that a conspiracy existed; that it had not come
to an end when the declaration was made; and that the speaker and the
person against whom the declaration is offered were members of the
conspiracy.

At the trial of an indictment charging several defendants with a conspiracy
to receive stolen goods, a list, made by one defendant after the end of
the conspiracy, of details as to the goods stolen, was admitted in
evidence as to him alone but was used freely by the district attorney
during the trial for the purpose of refreshing the recollections of other
defendants who testified for the Commonwealth.    In his charge, al-
though proper requests for rulings, sound in law, were made, the judge
ignored the qualification that, once a conspiracy has ended, the de-
clarations of a conspirator made thereafter are not evidence against
other alleged members of the conspiracy, and permitted the jury to use
the list against any of the other defendants whom they found to have
been participating in the conspiracy; and the principal defendant
alleged exceptions.    There was plenary evidence, including legitimate
use of the list to refresh witnesses' recollections, testimony by con-
federates and testimony by the defendant, which, if believed, placed
the guilt of the principal defendant beyond a doubt.    *Held,* that, in the
circumstances, the absence of the list from the evidence could not have
changed the result of the trial and that, although the charge was con-
fused with regard to the list and the judge gave less importance to it
than the defendant's contentions sought to attribute to it, the error
did not require that exceptions by the defendant should be sustained.

INDICTMENTS, found and returned on November 7, 1924, for larceny, receiving stolen goods, and conspiracy to commit the crimes of larceny and of receiving stolen goods.

The indictments are described in the opinion. They were tried together before *Walsh*, J. The circumstances surrounding the introduction and use of Exhibit 2, described in the opinion, were as follows: The exhibit was offered in evidence during the testimony of the proprietors of the United Wholesale Grocery Company, who testified that it was made by the defendant Reines, who was receiving clerk for the company. Its admission was objected to by counsel for the defendants McDermott and Linsky on the ground that it was not competent evidence as against those defendants. The district attorney then offered it for the limited purpose of being used against the defendant Reines, and it was admitted by the judge "as against the defendant Reines." Among other requests for rulings, made by the defendant McDermott at the close of the evidence, were the following:

"24. Upon all the evidence in this case if any conspiracy existed between this defendant and others named in the indictment, it terminated on October 11, 1924.

"25. The jury are instructed so far as the defendant, McDermott, is concerned that Exhibit 2 in this case which is the statement purporting to be made on October 17, 1924, by Reines is not to be considered as evidence against McDermott.

"26. The jury are instructed that when Exhibit 2 (the Reines statement) was introduced, it was offered and admitted solely as against the defendant, Reines, upon the promise of the district attorney that he would thereafter connect it with all the defendants.

"27. Declarations of conspirators are only admissible when they are made by a conspirator or conspirators during the existence of the conspiracy and in the furtherance and carrying out of said conspiracy.

"28. The statements of a conspirator after the conspiracy had accomplished its end and ceased to exist, are admissible only against the party making them.

"29. When evidence is admitted against one defendant only, the jury are cautioned not to consider such evidence as against any other defendant."

In his charge, the judge instructed the jury on this subject as follows:

"You will recall that one of the defendants, Reines, made a certain statement, Exhibit 2, in which he set forth various dates, various commodities in certain quantities, which he said were left off of the trucks, either at the defendant McDermott's store or at the defendant Linsky's store.

"That statement . . . as made by the defendant Reines, at the time he made it, was evidence only as against him, and if you are satisfied that the statement which he made in Exhibit 2 has not been connected with the other defendants by other testimony or evidence in this case, why, then even now it is only to be taken as against the defendant Reines.

"But you are to say, from the other testimony in the case, whether it has been established, by testimony from other documents or other witnesses, that upon these dates, or any of these dates, the commodities mentioned under those dates, or upon such dates as you find goods were actually left and commodities in such quantities as you may find were actually dropped off those trucks, have been connected up by other testimony which satisfies you that there was a conspiracy existing here, in which Reines, McDermott, Linsky, Lavalle and others were participants. Then you may take into consideration the statement of the defendant, Reines, as contained in Exhibit 2, as against all of those whom you find to have been operating or guiding and conducting or participating in any way in carrying out the purposes and object of that conspiracy."

The defendant McDermott excepted to the refusal and failure of the trial judge to rule in accordance with the requests above quoted.

Other material evidence and rulings by the trial judge and exceptions saved by the defendant McDermott are described in the opinion. The defendant was found guilty of conspiracy to commit the crime of receiving stolen goods and on various counts for receiving stolen goods. He alleged exceptions.

*J. H. Vahey,* (*J. S. Cannon* & *M. F. Brady* with him,) for the defendant.

*A. K. Reading,* District Attorney, *S. H. Lewis,* Assistant District Attorney, & *R. W. Stearns,* Assistant District Attorney, for the Commonwealth, submitted a brief.

WAIT, J.    The United Wholesale Grocery Company, a voluntary trust carrying on business at Worcester, employed the Hildreth Trucking Company to transport goods from Boston to Worcester. The trucks both going and coming passed through Waltham. Certain drivers of the trucks, from September, 1923, until the State police interfered on October 11, 1924, made a practice of selling part of the lading of their trucks belonging to the grocery company to the defendant, McDermott, a storekeeper in Waltham, for cash or for liquor. They either left the goods with him en route from Boston to Worcester, or, having arranged a sale, brought him the goods on their return from Worcester, and they received from one Reines, the receiving clerk of the grocery company at Worcester, slips acknowledging the receipt by the grocery company of the entire ladings which had been placed upon the trucks at Boston. In most cases McDermott paid the drivers; but a few times he made payment to Reines.

The Commonwealth sought to prove these transactions to be a criminal conspiracy between McDermott, the truckmen and Reines to steal or to receive stolen goods; and to be larceny or receiving of stolen goods by the several participants.

An indictment was returned against McDermott, the purchaser, Bourget, Carter, Gibree, Willand, Schackett, Adams, Morrell, LaVallee, truck drivers, Reines, the delivery clerk, and one Linsky, another Waltham tradesman, charging, in its first count, that they conspired to steal goods of the grocery company, and, in its second count, that they conspired to buy, sell and aid in the concealment of stolen property belonging to the company.

An indictment also was returned against McDermott charging him in half of the two hundred and eighty-two counts with larceny of goods of the company in specific amounts and at specified times, and in the other half with buying,

receiving and aiding in the concealment of stolen property. Bourget, Morrell, Carter, Schackett and Willand pleaded guilty to the conspiracy and also to separate indictments for larceny. LaVallee pleaded guilty to larceny but not guilty to the conspiracy. McDermott, Reines, LaVallee and Linsky were placed on trial together; all but LaVallee for both conspiracy and for larceny and receiving stolen goods. Linsky was found not guilty. McDermott, Reines and LaVallee were found guilty of conspiracy to commit the crime of receiving stolen goods, and McDermott, besides, was found guilty on one hundred and seventeen counts for receiving stolen goods.

McDermott saved exceptions to the admission of evidence, to refusals to instruct the jury as requested, to refusals to direct a verdict of not guilty of conspiracy and on the counts alleging larceny, and to certain portions of the charge to the jury. We shall deal with them, not in detail, but with reference to the contentions of his brief.

The police interfered on October 11, 1924. Within a day or so thereafter, Reines, who, as his employer testified, had a remarkable memory, began the preparation of a list of the amounts taken with the date of the taking and the name of the driver concerned. He had memoranda kept by him of some of the happenings. On October 15 he pointed out from the receiving books of the grocery company items which had gone to McDermott. He prepared on yellow sheets lists of the items. These, on October 20, he compared and checked with the books of the Hildreth Trucking Company, and a schedule was made up with dates, goods and names of truckmen, of merchandise which had been shipped by Hildreth Trucking Company from points in Boston to the grocery company in Worcester and which he had receipted for as delivered to that company but which in fact never was so delivered. This schedule he certified and marked on each sheet with his initials, as of October 17, 1924. His original memoranda he destroyed and the yellow sheets do not appear. This schedule was offered in evidence. On objection by McDermott and Linsky, it was admitted as against Reines alone. It was used as Exhibit 2, during the trial, as a

basis of questions put to witnesses and, apparently, as a guide in proof.

Somewhat similar schedules were prepared dealing with the sales and deliveries made by the drivers, who talked them over with Reines and the officers acting for the Commonwealth in investigating the matter and preparing for trial. There was considerable evidence of statements made by Reines in regard to these schedules.

Succinctly stated, McDermott's contentions are that he should have a new trial because the judge failed accurately to define to the jury the limits within which a declaration of an alleged conspirator can be used against another; because he permitted certain schedules to be used in refreshing the memory of witnesses, and because he refused to permit certain cross-examination.

First, in regard to the questions excluded in cross-examination. They were intended to affect the credibility of the witnesses by showing pleas of guilty to indictments which contained charges of which they were ignorant, or items inconsistent with testimony given upon the stand. While not absolutely immaterial, the evidence fell within the class where the discretion of the judge in controlling the limit of cross-examination applies, and where, in the absence of abuse, the exercise of that discretion will not be interfered with. *Commonwealth* v. *Russ,* 232 Mass. 58, 78, 82. *Commonwealth* v. *Kaplan,* 238 Mass. 250, 255. *Commonwealth* v. *Sacco,* 255 Mass. 369, 439.

Next, in regard to the refreshing of memory. Certain of the truck drivers pleaded guilty to indictments charging them with larceny and conspiracy. In the investigation by the police, and in the preparation of the cases for trial, as has been stated, they had prepared schedules of dates and items of deliveries by themselves to McDermott, or had gone over and checked up schedules prepared by Reines or by others in conjunction with him, in relation to such deliveries. They were permitted to use these schedules to refresh their memories while testifying for the Commonwealth at this trial.

The rule in this Commonwealth is that any paper which in

fact refreshes the memory of a witness may be used by him for that purpose. It is immaterial that the paper is not contemporaneous with the event it records, or that it was not made by the witness. *Coffin* v. *Vincent,* 12 Cush. 98. *Dugan* v. *Mahoney,* 11 Allen, 572. *Commonwealth* v. *Ford,* 130 Mass. 64, 67. *Costello* v. *Crowell,* 133 Mass. 352. *Mayberry* v. *Holbrook,* 182 Mass. 463. *Commonwealth* v. *Burton,* 183 Mass. 461, 470. *Holden* v. *Prudential Ins. Co. of America,* 191 Mass. 153, 158. *Allwright* v. *Skillings,* 188 Mass. 538. *Fay* v. *Walsh,* 190 Mass. 374, 377. See also *Kaplan* v. *Gross,* 223 Mass. 152, 155.

Last, in regard to the declarations of a conspirator.

It is well settled that declarations made by one conspirator in the course of the conspiracy, before it has come to an end in failure or success, are admissible in evidence against the other conspirators. The jury must be satisfied that a conspiracy existed; that it had not come to an end when the declaration was made; that the speaker and the person against whom the declaration is offered were members of the conspiracy; then they can give evidentiary effect to the declaration against other conspirators. *Commonwealth* v. *Brown,* 14 Gray, 419. *Commonwealth* v. *Rogers,* 181 Mass. 184, 193. *Commonwealth* v. *Stuart,* 207 Mass. 563. *Attorney General* v. *Pelletier,* 240 Mass. 264, 312. Declarations, admissions, confessions made after the conspiracy has ended bind only the maker; and cannot be used in evidence against other members of the conspiracy not present when they were made. *Commonwealth* v. *Rogers, supra.* Under this rule of law Exhibit 2 was not admissible in evidence against McDermott. It never was admitted in evidence against him. The defendant McDermott was entitled to a clear instruction that although properly in evidence to be weighed in regard to the guilt or innocence of its maker, Reines, it was not to be used as evidence to affect McDermott. It was made after the conspiracy charged had ended, and it was a mere narrative. The judge was right in refusing to strike it from the evidence. *Commonwealth* v. *Bingham,* 158 Mass. 169, 171. He was right in refusing to rule that declarations of Reines whenever made were inadmissible against

McDermott. He was right in much that he charged the jury in regard to such declarations, and to Exhibit 2. There are, however, objectionable passages in the charge which were called by counsel to the attention of the judge and which, if they stood alone, would require us to sustain his exception. The judge ignored the qualification that once a conspiracy has ended, the declarations of a conspirator made afterward are not evidence against other alleged members of the conspiracy.

The defendant, however, attributes much greater value as evidence to Exhibit 2 than it is entitled to. There was plenary evidence of his guilt if Exhibit 2 is utterly disregarded. We do not see how its absence could have changed the result of the trial. Its use to refresh the memory of witnesses, though they testified against McDermott, was legitimate. Reines, Bourget, Willand, Schackett, Morrell, LaVallee, testified of their own personal knowledge to acts and sayings of McDermott connected with sales and payments for goods which they admitted they had stolen and conspired to steal, which, if believed, placed his guilt beyond a doubt. He admitted having acquired the goods. His explanations were no less plausible by reason of the existence of Exhibit 2.

If the charge was confused with regard to Exhibit 2, or if the judge gave less importance to the exhibit than the defendant's motions and requests for rulings sought to attribute to it, the error does not require that we should sustain the exceptions. *Commonwealth* v. *Dascalakis*, 243 Mass. 519; *S. C.* 246 Mass. 12.

We have examined all the exceptions and find no reversible error. The order will be

*Exceptions overruled.*