ALONZO W. WHITCOMB *vs.* REED-PRENTICE COMPANY & others.

Worcester.    September 28, 1927. — January 30, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Conversion. Conspiracy. Agency*, Scope of authority, Ratification by principal. *Damages*, In tort. *Practice, Civil*, Exceptions; Conduct of trial: requests, rulings and instructions. *Evidence*, Of conspiracy, Of malice, Competency.

At the trial of an action of tort against a corporation, a national bank and officers of the bank for damages caused by the carrying out of an alleged conspiracy resulting in the ruining of the plaintiff's business of manufacturing machinery by the converting or selling of all his ma-

chinery as though in liquidation, there was evidence that the plaintiff's attorney had conferences with the bank, which was his principal creditor, for the purpose of procuring an extension of loans for the carrying on of his business, and that the plaintiff and his son had conferences with the defendant corporation with a view to selling some, but not all, of his machinery and doing so under the corporation's name; that thereafter, knowingly, without authority of the plaintiff, and after conferences with one another, the defendants caused advertisements to be published purporting to offer for sale all the plaintiff's machinery and in the name of the plaintiff; that such advertisements were intended by the defendants as for sales in liquidation, and that they purported to be such; that sales accordingly were carried out; that the plaintiff did not ratify such acts; and that the plaintiff's business was ruined. *Held,* that

(1) It was proper to deny motions by the defendants for verdicts in their favor;

(2) A finding was warranted that the defendants exercised a dominion and control over the plaintiff's property which amounted to a conversion;

(3) The plaintiff was not limited in his recovery to the market value of the property actually sold, or to such value at the time and place of sale; it was also a question for the jury to determine, apart from the value of the property converted, to what extent, if any, the plaintiff's business was injured or destroyed by the conversion of his machinery and equipment;

(4) A request for an instruction, "In order to recover for the insertion of the advertisement by the defendant . . . [corporation], plaintiff must prove that the defendant acted maliciously with intent to cause injury to the business and credit of the plaintiff," was given in substance, although the word "maliciously" was not used, it being covered by a statement that the plaintiff must prove that the defendants "acted with intent to cause injury to the business and credit of the plaintiff";

(5) It was proper to deny a request that there was no evidence of malice; the evidence warranted an inference that there was malice in law;

(6) It could not rightly have been ruled that damages for the destruction of the plaintiff's business, good will and credit were too remote and speculative to be recovered; while such damages could not be proved with absolute precision and mathematical certainty, the evidence was not so conjectural as to prevent recovery;

(7) There was evidence warranting a finding that the defendants acted together in the carrying out of a conspiracy, and the admission of evidence of acts and statements of each defendant in furtherance of the common plan was proper.

Tort against Reed-Prentice Company, The Merchants National Bank of Worcester, John J. Flynn and Walter Tufts. Writ dated August 18, 1925.

The plaintiff in a declaration, as amended by leave of court after the close of the evidence, in a single count with seventeen paragraphs covering over five pages of the printed record, alleged in substance that, after Mr. Rufus B. Dodge on behalf of the plaintiff had consulted with the defendant Tufts, an officer of the defendant bank, the plaintiff's principal creditor, with relation to means of maintaining the plaintiff's credit in carrying forward his business, Tufts conceived, and the defendants Tufts and Flynn, also an officer of the bank, "planned and entered into a plan, scheme or conspiracy to injure the plaintiff, in which they were later joined by the defendant Reed-Prentice Company. Among the principal objects to be obtained by this conspiracy were certain profits for the defendant Reed-Prentice Company and also that payment of the notes due The Merchants National Bank of Worcester from the plaintiff should be forced upon the plaintiff in part before payment was due and as to the whole by arbitrary and unlawful means." Further allegations were as follows:

"11. All the defendants hereto as a part of their plan, scheme or conspiracy had agreed to inserting the advertisement hereinbefore referred to and selling and otherwise wrongfully converting the plaintiff's business and all his machinery and equipment of whatever nature. It was a part of their scheme and intention that the Reed-Prentice Company was to make a large commission on all the sales that were put through and was in addition greatly to increase its good will among its customers by virtue of having sold to them all the machinery of great value belonging to the plaintiff at prices greatly below their true value.

"12. All the defendants hereto also intended and planned that by and through the operation of their scheme or conspiracy to injure the plaintiff, the Reed-Prentice Company would succeed to the business and to the good will of the Worcester Lathe Company and would be in a position to manufacture and sell not only lathes and parts and repairs for the same, but the special and profitable forms of air compressors and refrigeration units and to do a profitable business with former customers of the plaintiff doing business

as the Worcester Lathe Company, and others whom they would obtain as the result of the scheme and of putting it into effect.

"13. On Monday, July 13, 1925, representatives of the defendant The Merchants National Bank of Worcester and of the defendant Reed-Prentice Company entered upon the premises of the plaintiff and wrongfully sold, removed, carried away, and otherwise converted or caused to be converted to their own use the machinery, machine tools, stock in trade and other equipment owned and possessed by the plaintiff and used by him in connection with his business, showing large numbers of buyers through the plaintiff's plant, selling or purporting to sell to such of these buyers as would purchase the property of the plaintiff at prices greatly below the true value of the property being sold. The defendant Walter Tufts thereupon told the plaintiff that neither the plaintiff nor his representatives was to come in or near the plant, and that the defendant The Merchants National Bank of Worcester together with the defendant Reed-Prentice Company was about to liquidate the entire business of the Worcester Lathe Company and sell all the assets of the business at such prices as could be obtained, and that thereafter in case insufficient money to pay the creditors other than the defendant The Merchants National Bank of Worcester were received that the defendant would thereupon proceed to sell the plaintiff's home and apply the proceeds thereof in settling such debts."

"17. The defendants by their actions as aforesaid and conspiring together as hereinbefore set forth have by their concerted action totally ruined the plaintiff's business built up through a period of some ten years, have wholly destroyed the plaintiff's good will, have wholly destroyed the plaintiff's credit and standing in the community and have rendered impossible any further earning of profits by the plaintiff in the business to which the plaintiff has devoted his life."

The action was tried before *Donahue*, J. Material evidence is stated in the opinion. At the close of the evidence, each defendant moved that a verdict be ordered in its or his favor. The motion of the defendant Flynn was allowed.

The other motions were denied. The defendant Reed-Prentice Company asked for the following rulings:

"1. There is no evidence that the Reed-Prentice Company participated in any conspiracy to injure the plaintiff, his business or property as alleged in the declaration of the plaintiff."

"4. There is no evidence that any unauthorized acts of the above named defendant destroyed or injured the credit or standing of the plaintiff in the community."

"6. Even if the authority to advertise and sell the plaintiff's machinery or equipment as originally given was exceeded by this defendant, the plaintiff by his subsequent acts and acquiescence and those of his son, elected to treat the acts of this defendant as if originally authorized, and this defendant is not liable in this action.

"7. Upon all the evidence the plaintiff, by his acts and acquiescence and by the acts and acquiescence of his son ratified the acts of the defendant complained of."

"9. There was no conversion by the defendant, Reed-Prentice Company, of any machines, equipment or merchandise not actually sold by it.

"10. If liable at all for conversion, this defendant is liable only for the fair market value of the machinery and equipment sold at the time and place of sale.

"11. The advertisement in the *Telegram* of July 12, 1925, was not a statement from which it could be inferred that the plaintiff was going out of business.

"12. In order to recover for the insertion of the advertisement by the defendant Reed-Prentice Company, plaintiff must prove that the defendant acted maliciously with intent to cause injury to the business and credit of the plaintiff.

"13. There is no evidence of malice on the part of the defendant."

"15. Damages for the ruin of the plaintiff's business and good will and the destruction of his credit and standing in the community are too remote and speculative to be recovered in this action."

The defendant Tufts and the defendant bank asked for the following rulings:

"1. There is no evidence of a conspiracy against the plaintiff to which the above named defendants were parties."

"5. There is no evidence that any unauthorized acts of the above named defendants destroyed or injured the credit or standing of the plaintiff in the community."

"7. Even if the authority to advertise and sell the plaintiff's machinery and equipment as originally given was exceeded by the defendants the plaintiff by his subsequent acts and acquiescence and those of his son elected to treat the acts of the defendants as if originally authorized and the defendants are not liable in this action.

"8. Upon all the evidence the plaintiff by his acts and acquiescence and by the acts and acquiescence of his son ratified the acts of the defendants complained of."

"10. There was no conversion by the defendants of any machines, equipment or merchandise not actually sold."

"12. If liable at all for conversion the defendants are liable only for the fair market value of the machinery and equipment sold at the time and place of sale.

"13. The advertisement in the Telegram of July 12, 1925, was not a statement from which it could be inferred that the plaintiff was going out of business.

"14. In order to recover for the insertion of the advertisement by the defendant Reed-Prentice Company, the plaintiff must prove that the defendants acted maliciously, with intent to cause injury to the business and credit of the plaintiff.

"15. There is no evidence of malice on the part of the defendants."

"17. Damages for the ruin of the plaintiff's business and good will and the destruction of his credit and standing in the community are too remote and speculative to be recovered in this action."

The requests were denied. There were separate verdicts against each of the defendants Reed-Prentice Company, The Merchants National Bank of Worcester and Tufts in the sum of $32,000. Each of the defendants alleged exceptions.

*A. S. Houghton,* for the defendant Reed-Prentice Company.

*A. J. Young*, for the defendants The Merchants National Bank of Worcester and Tufts.

*J. N. Welch*, (*R. W. Hale* with him,) for the plaintiff.

CROSBY, J.   This is an action of tort to recover damages for the alleged conversion of the plaintiff's property and injury to his business, by the defendants acting in concert.

The plaintiff, for several years before July, 1925, owned and conducted a machine shop in Worcester, in this Commonwealth, under the name of the Worcester Lathe Company, where he manufactured machine tools, lathes, repair parts for lathes, and also electric refrigerating units, and air compressors for use in garages and automobile service stations.

The plaintiff testified in substance that in February, 1925, he owed the Merchants National Bank of Worcester $13,000 which had not been reduced for a long time; that the lathe business "was pretty nearly dead"; that in the spring or early summer of 1925 he decided to sell a large part of his manufacturing machinery, and he took the matter up with the defendant Reed-Prentice Company about three or four weeks before July 12, 1925; that it was about the middle of the preceding June when his son took up with one McIntyre (the vice-president and sales manager of Reed-Prentice Company) the question of selling the machinery; that he learned from his son that McIntyre had applied to appraise the machinery; that he relied on McIntyre for an estimate of its value; that an appraisal sheet prepared by McIntyre was shown him by his son, and he assumed that it did not include certain machines which he desired to reserve and of which McIntyre was informed; that he was willing that the rest of the machines should be sold for a satisfactory price; that he told his son "to do with this appraisal whatever he did"; that at this time his son was in charge of the business; that he had the appraisal in his possession for three or four weeks and consented to his son asking McIntyre to include it in the list of machinery they were selling, but with no understanding that he was obliged to sell it.

Wilton A. Whitcomb, the plaintiff's son, testified that he talked with McIntyre about listing the machinery for

sale; that McIntyre said it was to be advertised in the Reed-Prentice Company list; and that nothing was said about advertising the machinery in the name of the Worcester Lathe Company.

Upon the foregoing and other testimony offered by the plaintiff it is clear that the Reed-Prentice Company was authorized by the plaintiff's son to sell the machinery, which had been appraised by the company and a copy of the appraisal submitted to the plaintiff, and that he authorized and consented to such sale. Thereafter the Reed-Prentice Company sent out typewritten lists of machinery which had been submitted to the plaintiff. Later this company sent out other lists which included items not on the original list, namely, "Chain Falls, Electric Drills, Belting, Steel Pulleys, Small Tools of all descriptions, Steel, Hand Trucks, Scales, etc." The defendant Reed-Prentice Company, by its representatives, on July 12, 1925, caused to be inserted in the Worcester Telegram, a newspaper published in Worcester, and also in a Boston newspaper, and in a weekly trade journal, an advertisement of machines and tools for sale over the name of the Worcester Lathe Company.

It is the contention of the plaintiff that all the defendants participated in taking possession of all the plaintiff's machinery and equipment and in the sending out of the lists in which additional items were included, in the advertisements published in the newspapers under the name of the Worcester Lathe Company and in the sale of a portion of the property; that all such acts were without authority of the plaintiff and on account of them he suffered damage. It is the contention of the defendants that all these acts were either authorized by the plaintiff or were afterwards ratified by him. If the defendants had advertised and sold only the property appraised and listed by the Reed-Prentice Company and which the evidence shows was assented to by the plaintiff, the defendants would not have been liable for sending out such lists. The plaintiff contended that the lists sent out containing certain items not included in the original list submitted to him indicated that the Worcester

Lathe Company was going out of business, and were likely to result and did result in serious damage to him.

McIntyre, who represented the Reed-Prentice Company, and under whose direction the lists were mailed to the trade, testified that the additional items in the last two lines of the later lists but not mentioned in the original list, such as "'chain falls, check drills, belting, steel pulleys, small tools of all descriptions, steel hand trucks, scales, &c.' . . . are part of the equipment of any shop that is sold, when liquidated"; that he did not have authority from the plaintiff to offer anything for sale at the first interview except the articles included in the original list; that the printed list was sent out after he had instructions from the plaintiff's son; and that he had consulted with the defendant Tufts, president of the defendant bank, who instructed him that the Worcester Lathe Company was to be liquidated.

One Higgins, an employee of the Reed-Prentice Company, who assisted in listing the machines to be sold, testified that the plaintiff's son told him that his father wanted the sales conducted under the name of Reed-Prentice Company, but that McIntyre said it would be impossible, that they did not care to have the name of his company connected with such sales; that "Around July 6 he [the plaintiff's son] telephoned to me, said he had gone over the list with his father, that it was all right, and to go ahead and sell the machinery and equipment at the Worcester Lathe Company on the basis that we had agreed upon, or that we had talked over." This witness also testified that in conversation with the plaintiff's son, "We said we would advertise same as we had in the past. . . . One planer of Mr. Whitcomb's we had in the past advertised under our name . . . I sold a lot of stuff that was not on the written list."

The Reed-Prentice Company was engaged in the manufacture of machine tools, and also as a part of its business had a department in which it sold used tools no longer needed in their business, and they also sold for others on commission used machinery and tools.

The Merchants National Bank of Worcester at the time of the acts complained of held unsecured notes of the plaintiff

amounting to $13,000 and was his largest creditor. In February or March, 1925, the plaintiff had a talk with Tufts and submitted statements of his financial condition; these statements were not satisfactory to Tufts, who gave the plaintiff six months, during which it could be determined what the financial condition promised. Late in June following, it appeared that the plaintiff consulted his lawyer, one Dodge, and gave him a statement of his financial condition. Immediately thereafter Mr. Dodge conferred with Tufts and told him that the plaintiff was unable to meet his financial obligations. Mr. Dodge testified that at this interview nothing was said about the sale of the assets; that at some of the interviews he told Tufts "that the best way of settling this matter was through bankruptcy." This witness further testified that he never requested or consented to the Merchants National Bank of Worcester liquidating the Worcester Lathe Company, and never requested or consented that Tufts or Flynn (one of the vice presidents of the bank) should "liquidate the assets" of the company.

Tufts testified, in substance, that Mr. Dodge asked him if he would be willing to help in the liquidation of the business and he answered he would be glad to do so; that Mr. Dodge asked him if the bank could get the Reed-Prentice Company to interest itself in the sale of the machinery, and that Tufts said he would endeavor to "arrange to get in touch with them"; that afterwards he saw McIntyre and told him that Mr. Dodge had said that the Worcester Lathe Company wanted to liquidate its business, and asked him if he would assist in the sale of the machine tools, and that McIntyre said he had already made an appraisal and was all ready to go ahead; that he did not remember having any further conference with McIntyre before the sale was advertised in the Worcester Telegram, and that no proof of such advertisement was submitted to him; that the plaintiff called to see him two or three days after the advertisement appeared and said he was surprised that it had appeared; that he (Tufts) told him, "I was sorry, that it was a mistake on our part; that we usually extended our customers the courtesy of speaking about anything of that sort before it was in-

serted"; that he asked the plaintiff for the key to the premises and it was given to him, and that he gave it to Flynn, another officer of the bank.

It appeared that a release, dated originally July 20, 1925, and afterwards changed to July 23, 1925, running from the plaintiff to the bank and releasing the latter from all liabilities which the plaintiff had or might have against it in connection with the affairs of the Worcester Lathe Company, was prepared by Flynn, and submitted to the plaintiff, but was not signed by him.

Upon the foregoing and the entire evidence it could have been found that the acts of the bank and its officers were unauthorized and resulted in damage to the plaintiff.

Each defendant at the close of the evidence filed a motion for a directed verdict. The motion filed by the defendant Flynn was allowed, the others were denied. Upon the conflicting evidence and the reasonable inferences which might have been drawn therefrom, the motions denied could not properly have been allowed. There was evidence from which it could have been found that certain machinery and tools were advertised and sold without authority from the plaintiff, and that such acts were not afterwards ratified by him. It also could have been found that the advertisement of the property in the name of the Worcester Lathe Company was without authority given by the plaintiff. Such wrongful exercise of dominion and control over the property amounted to a conversion of it.

If it be assumed that the plaintiff's attorney had authority to request the defendant Tufts to liquidate the business of the plaintiff by the advertisement and sale of all its machinery and equipment, it still was a question for the jury upon the evidence to decide whether he made such a request. Although the business was undoubtedly in poor condition at the time of the acts complained of, it could not rightly have been ruled that the acts of the defendants did not result in further injury and impairment of the business and the plaintiff's credit by reason of such acts. It could not have been ruled as matter of law that, even if the authority originally given to sell the plaintiff's property was exceeded

by the defendants, the plaintiff and his son subsequently ratified such acts. The question whether the plaintiff assented to a conversion of the machines and equipment was, upon conflicting evidence, properly submitted to the jury. The effect of the finding of the jury was that there was a conversion, and that the plaintiff was entitled to recover the fair market value of the property at the time possession thereof was taken by the defendants. The plaintiff was not limited in his recovery to the market value of the property actually sold, or to such value at the time and place of sale. It was also a question for the jury to determine, apart from the value of the property converted, to what extent, if any, the plaintiff's business was injured or destroyed by the conversion of his machinery and equipment. *Bartlett* v. *Greenleaf,* 11 Gray, 98. *Price* v. *Goldberg,* 241 Mass. 465. The jury in substance were so instructed.

In view of the evidence, it could not rightly have been ruled that the advertisement printed in the Worcester Telegram did not indicate that the plaintiff was going out of business, especially in view of the testimony of the witness McIntyre, above referred to.

The defendants requested the following ruling: "In order to recover for the insertion of the advertisement by the defendant Reed-Prentice Company, plaintiff must prove that the defendant acted maliciously with intent to cause injury to the business and credit of the plaintiff." This request in substance was given. Although the word "maliciously" was not included in the instructions given, it was covered by the statement that the plaintiff must prove that the defendants "acted with intent to cause injury to the business and credit of the plaintiff." The word "maliciously" means "wilfully and intentionally." Malice in its legal sense means a wrongful act, done intentionally, without just cause or excuse even if it is from good motives and without express malice. *McGurk* v. *Cronenwett,* 199 Mass. 457, 461, 462, and cases cited.

The request that there is no evidence of malice on the part of the defendants was rightly denied. If, as the jury could have found, the defendants caused the advertisement in the

newspaper over the name of the Worcester Lathe Company, it could have further been found to have been so published without the consent of the plaintiff, and that the only authority given was to advertise in the Reed-Prentice Company list. Upon such findings malice in law would be inferred. *Commonwealth* v. *Pemberton*, 118 Mass. 36. *Berry* v. *Donovan*, 188 Mass. 353. *M. Steinert & Sons Co.* v. *Tagen*, 207 Mass. 394, 397. *Anderson* v. *Moskovitz*, 260 Mass. 523. *Mogul Steamship Co. Ltd.* v. *McGregor*, 23 Q. B. D. 598, 612.

Upon the evidence it could not rightly have been ruled that damages for the destruction of the plaintiff's business, good will and credit were too remote and speculative to be recovered. The burden was on the plaintiff to prove the damages he had sustained by reason of the wrongful acts of the defendants; and while such damages could not be proved with absolute precision and mathematical certainty, yet we are of opinion that the evidence was not too conjectural to prevent recovery. *Neal* v. *Jefferson*, 212 Mass. 517. *Nelson Theatre Co.* v. *Nelson*, 216 Mass. 30. *Burnham* v. *Dowd*, 217 Mass. 351. *Orbach* v. *Paramount Pictures Corp.* 233 Mass. 281.

The remaining exception taken by each defendant is to the refusal of the trial judge to instruct the jury that there was no evidence of any conspiracy entered into by the defendants to injure the plaintiff in his business or property, as alleged in the declaration. The gist of the action is the wrong done the plaintiff and the resulting damage. Although conspiracy is not the gist of the action, it was alleged in the declaration, and unless there was evidence sufficient to warrant a finding that it existed between the defendants to injure the plaintiff, the ruling requested should have been given, for the reason that unless there was concerted action on the part of the defendants, the acts and statements of one are not admissible against the others. *Commonwealth* v. *Stuart*, 207 Mass. 563, 567. *Attorney General* v. *Pelletier*, 240 Mass. 264, 312, 313. *Commonwealth* v. *McDermott*, 255 Mass. 575, 581. *Commonwealth* v. *Jacobson*, 260 Mass. 311.

If there was no evidence justifying a finding of conspiracy, the submission of that question to the jury was plainly pre-

judicial error, as the statements of certain defendants were admitted against the others. It could have been found that the authority given the Reed-Prentice Company by the plaintiff to sell machines and equipment was limited to those appearing in the original list submitted to the plaintiff, and that such sale was to be advertised in its own name, but that the Reed-Prentice Company, relying on the statement of Tufts to the effect that the plaintiff had consented to a sale and liquidation of the business, prepared a new list which included additional items tending to show that the business was to be liquidated. The new list was advertised in the name of the Worcester Lathe Company, which advertisement could have been found to have been unauthorized by the plaintiff. It could have been found that Tufts had no authority to instruct the Reed-Prentice Company to liquidate the business and that the latter had no right to rely upon instructions of Tufts as the Reed-Prentice Company was employed by the plaintiff and was to receive a commission of fifteen per cent on the sales.

It could have been found upon the evidence that all the defendants, except Flynn, acted together to accomplish a common purpose, namely, to liquidate the plaintiff's business by wrongful acts. The unauthorized listing for sale of property of the plaintiff and advertising it for sale under the name of the Worcester Lathe Company could have been found to have been participated in by the defendants acting together to accomplish an unlawful purpose, and were not independent acts of wrongdoing. As such findings were warranted, it could not properly have been ruled that there was no evidence of a conspiracy against the plaintiff.

Although there was no direct evidence to show that any officer of the defendant bank had anything to do with the preparation of the advertisements printed in the newspapers, under the name of the Worcester Lathe Company, it could reasonably be inferred that such advertisements were a part of the general unlawful plan in which the officers of the bank and Reed-Prentice Company were engaged. *Commonwealth* v. *Stuart, supra.*

If concerted action on the part of the defendants to ac-

complish a common purpose was found to be proved, then the acts and statements of each defendant in furtherance of the common plan were competent, and the trial judge in substance so instructed the jury. *Commonwealth* v. *Mc-Donald,* 147 Mass. 527. *Attorney General* v. *Pelletier, supra,* page 315. *Lawrence Trust Co.* v. *Sun-American Publishing Co.* 245 Mass. 262. *Commonwealth* v. *McDermott, supra.*

It follows that the rulings requested could not properly have been given. The instructions adequately and accurately dealt with the issues involved. We perceive no error in the conduct of the trial.

*Exceptions overruled.*