FRIEND LUMBER CO. INC. *vs.* ARMSTRONG BUILDING FINISH CO.

ARMSTRONG BUILDING FINISH CO. *vs.* FRIEND LUMBER CO. INC.

Suffolk. January 13, 1931. — September 9, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Evidence,* Competency, Admissions, Of agency. *Witness,* Cross-examination. *Agency,* Existence of relation, Ratification. *Corporation,* Officers and agents. *Practice, Civil,* New trial. *Notice. Constitutional Law,* Trial by jury.

At the trial of an action of contract by a corporation dealing in lumber against a corporation dealing in building finish for the purchase price of lumber, it appeared that there were three stockholders of the de-

fendant who comprised the entire board of directors, that all its business was done by unanimous vote of the directors and that no one of them had specific authority alone to close contracts. One of them ordered the lumber, and the issues at the trial were, whether the purchase was his independent enterprise, or whether the defendant had authorized or ratified his action in ordering the lumber in its behalf. It was *held*, that

(1) Testimony of an officer of the plaintiff that the officer of the defendant who ordered the lumber had said, when demand was made for payment of the plaintiff's bill, that he would give as collateral a mortgage on property on which the lumber was being used provided terms could be agreed upon and that he would have to take it up with the other officers of the defendant, was admissible, not to prove the truth of the assertions or the nature and extent of his authority as an agent for the defendant, but to show that he purported to be acting for the defendant as principal and not for himself;

(2) Testimony by the same officer of the plaintiff that, after the conversation above described, he saw the other two directors of the defendant at the defendant's office and they said that they would take the matter up with the first director and let the witness know later and that their corporation had made no money on the property where the lumber was used, also was admissible to show that the defendant was principal in the transaction;

(3) Testimony by an officer of the plaintiff that, having called the defendant on the telephone, he talked with some one at its place of business saying he would buy building finish from the defendant provided the prices were as low as prices of others and that the orders thus given should go as a credit on the account of the plaintiff against the defendant, and that he bought the building finish on those conditions, was admissible to show that he believed the sales of lumber by the plaintiff were to the defendant and not to the individual who gave the order for the lumber, and that he acted in good faith in the belief that he was dealing with the defendant through an authorized agent.

It was within the discretion of a trial judge, after a conference of a witness and counsel for parties at the bench, to refuse to permit the witness to be questioned in cross-examination respecting a statement made by him in such conference.

At the trial of the action above described, there was evidence that the other two stockholders and directors of the defendant knew that the first director had purchased the lumber of the plaintiff for the defendant, and it was *held*, that, if such purchases exceeded his authority, it was their duty as directors to renounce the transaction in behalf of their company; and that failure to do so indicated ratification.

The charge to the jury in the action above described was *held* to have stated with sufficient accuracy and in simple language capable of being easily understood the controlling principles of law respecting ostensible authority of the officer of the defendant who ordered the lumber of the plaintiff.

A defendant in an action of contract failed to comply with the requirement of Rule 48 of the Superior Court (1923) in that, after filing a motion for a new trial, he did not deliver or mail to opposing counsel notice and a copy of the motion on the date when it was filed, but sent such notice and copy six days later, and afterwards moved that the time for giving such notice be extended. The motion was granted. *Held*, that no error was shown.

The requirement of G. L. c. 231, § 127, that "a verdict shall not be set aside except on written motion by a party to the cause, stating the reasons relied upon in its support," means that the reasons stated in the motion alone may be considered by the judge and that upon those alone his decision must be based.

The provisions of G. L. c. 231, §§ 127, 128, are a constitutional exercise of power by the General Court and do not impair the essentials of the right to trial by jury secured by the fundamental law.

Those sections narrow the earlier power of the trial judge to set aside a verdict upon his own motion for any cause allowed by law.

An action by a lumber company against a building finish company upon an account annexed for lumber sold and delivered and an action by the building finish company against the lumber company for building finish sold and delivered were tried together. It was admitted by the parties that the building finish was sold and delivered and that the price charged therefor was correct, and the judge ordered a verdict for the building finish company in the second action. There were in evidence payments by the defendant in the first action other than those stated in the account annexed. In that action the jury found for the plaintiff in the amount claimed in the declaration with interest from the date of the writ to the date of the verdict. The defendant in the second action, the lumber company, moved that the verdict therein be set aside and a new trial granted on the grounds that the verdict in that action was against the evidence and against the weight of the evidence. The judge allowed the motion, stating as grounds for doing so: "It was admitted that the defendant owed the amount of the verdict. It appears, however, from undisputed evidence, that the verdict in the cross suit for the . . . [lumber company] was for a balance due from the . . . [building finish company] after making allowance for the amount of the verdict against the . . . [lumber company]. It would be a manifest injustice to permit the verdict which was ordered by consent of parties to stand and thereby to allow the . . . [building finish company] to obtain the double credit." The record before this court disclosed no evidence of other sales by the lumber company to the building finish company than those stated in the account annexed in the first action. *Held*, that

(1) Although the judge's statement of reasons for setting aside the verdict did not mention specifically any one of those stated in the defendant's motion, its tenor was plain and signified that, in view of all the circumstances, the verdict which he had ordered had no real support in evidence and ought not to stand as the basis of a judgment;

(2) It must be presumed that there was sufficient basis in fact to support the statement filed by the judge;

(3) In the circumstances, and upon the record, it was of no consequence that the declaration in the first action in its account annexed did not show the credit for the goods which were the ground for the recovery in the second action;

(4) No error in the allowance of the motion was shown.

Two ACTIONS OF CONTRACT, each upon an account annexed. Writ in the first action in the Municipal Court of the City of Boston dated March 20, 1929; and in the second action in the Superior Court dated April 16, 1929.

On removal of the first action to the Superior Court, the two actions were tried together before *Morton, J.*

The account annexed to the declaration in the first action is described in the opinion. The account annexed to the declaration in the second action contained three items of "house finish," amounting in all to $890.

From the record before this court, it appeared that there were items of debit and credit between the parties, admitted by them, which did not appear in the account annexed to the declaration in either action.

The "witness Thistle," referred to in the opinion, was one Thomas L. Thistle, attorney at law, attorney and assistant treasurer for Friend Lumber Co. Inc. The offer of proof by the counsel for Armstrong Building Finish Co. in cross-examination, after a conference of counsel and the witness at the bench, referred to in the opinion as excluded by the judge subject to exception by the Armstrong company was as follows: "I offer to prove that after making a statement, and after hearing that . . . [the judge] . . . ruled that it was not admissible, and after the lapse of an appreciable time, he [the witness] added the statement that the parties said they had made no money on the property."

That part of the judge's charge which related to ostensible authority of Sandler to act for the Armstrong company, excepted to by that company and referred to in the opinion, was as follows:

"Now let's consider for a moment just what is meant by an authorized agent. We ordinarily, of course, where a corporation is concerned look to the by-laws to see what the authority of the officers are, and if we look, as we have

done, and as you will do if you desire to further, at the by-laws of this corporation you will find no authority given to either the president or to two of the directors to purchase this property for the corporation. But it doesn't necessarily follow as matter of law that officers of a corporation who are not authorized by the by-laws to contract for the corporation cannot contract in such a way as to bind the corporation. If a corporation, if the directors of a corporation, and to make it more specific in this case, if the three directors of this corporation gave Sandler or Citron, either separately or together, the ostensible authority to buy these goods they might and would be bound by the exercise of that authority.

"Now what do I mean by ostensible authority? If an officer of a corporation, if Mr. Sandler, for instance, in this case, had by his acts and conduct, known to the other two directors, bought materials from time to time, and those actions and conduct were known to the other directors, and they sat by and did nothing and let him continue his course, and his conduct in regard to buying is such as to lead a reasonable man to believe that he had authority, which the others allowed him to exercise, he would have authority to bind the corporation in spite of the by-laws to the contrary. In other words, the limitation of the by-laws isn't necessarily binding on the question of authority. Now that is the law with reference to authorized agents and agents who are authorized to bind a corporation.

"Now the fact which the plaintiff must prove, or the facts which it must prove in order to hold the Armstrong Company responsible are the facts necessary to support those legal propositions. If they expect to hold the Armstrong Company liable, if they expect to hold the three directors, including Albert, responsible for this bill, they must satisfy you that not only Sandler, or, if Citron took part in it, that Sandler and Citron had been allowed by Albert to hold themselves out as having the right to bind the corporation, and thus to bind him, Albert — and it isn't a matter of guess, that sort of proof — you have got to be able as reasonable men on the credible evidence to

reasonably infer from the evidence that Albert had held these other two men out as his agents, as the agents of the corporation, in order to hold the corporation and thereby hold him. . . .

"Now, of course, the plaintiff has got to satisfy you that Sandler and Citron did order these goods, that Citron took part in it, because if he didn't take part in it he couldn't be bound by what Sandler did any more than Albert could, unless he as well as Albert had held Sandler out as having ostensible authority to make these purchases. Now on that question of authority, as I have said, the plaintiff has got the burden of satisfying you by reasonable inferences that Albert and Citron were responsible for this bill as directors of the corporation, because there were only three in the corporation, by reason of their allowing Sandler to act as their ostensible agent in buying these goods."

In the second action, it was admitted by the parties that the defendant purchased materials of the plaintiff in the amount of $890, upon which it was entitled to a ten per cent discount, and the judge ordered a verdict for the plaintiff in the sum of $801.

In the first action, the jury found for the plaintiff in the sum of $2,363.65.

Both verdicts were returned on February 28, 1930.

Proceedings relating to a motion by the Friend company for a new trial in the second action, allowed by the judge, are described in the opinion.

The Armstrong Building Finish Co. alleged exceptions in both actions.

*F. L. Simpson*, for Armstrong Building Finish Co.

*F. R. Mackenzie*, (*T. L. Thistle* with him,) for Friend Lumber Co. Inc.

RUGG, C.J. These two actions of contract were tried together. The one in which the Friend Lumber Co. Inc., hereafter termed the Friend Company, is plaintiff will be called the first case and the one in which the Armstrong Building Finish Co., hereafter termed the Armstrong Company, is plaintiff will be called the second case.

1. The first case is an action upon an account annexed,

consisting of ten items of charge for lumber, a cash credit of $100, and an item of interest from the date of demand to the date of the writ; the balance therein alleged to be due was $2,238.33. Verdict was returned for the plaintiff. There was no controversy at the trial that the plaintiff did not furnish the lumber charged and deliver it at the so called Walk Hill Street property. Confessedly this was done pursuant to orders given by one Sandler. The controversy was whether this was an independent enterprise of Sandler or whether the defendant had authorized or ratified the action of Sandler in ordering the lumber. At the times here material, Sandler, one Citron, and one Albert were the directors and sole stockholders of the Armstrong Company, Sandler being president, and Albert treasurer. All the business of the corporation was done by unanimous vote of the directors and no one of them had actual authority to close contracts. An officer of the Friend Company was permitted to testify (1) that Sandler said, when demand was made for payment of the Friend Company's bill, that he would give as collateral a mortgage on the Walk Hill property that they were building provided terms could be agreed upon and that he would have to take it up with the other officers of the Armstrong Company, and further (2) that later on going to the office of the Armstrong Company he saw Citron and Albert who said that they would take the matter up with Sandler and let the witness know later and that their corporation had made no money on the Walk Hill property. The statements of Sandler were admissible as tending to show that he purported to be acting for the Armstrong Company as principal and not for himself. They were admissible not to prove the truth of the assertions of the alleged agent but to show that he stated that he was acting as agent and not as the principal in the transaction. *Jefferds* v. *Alvard,* 151 Mass. 94. *Estes* v. *Aaron,* 227 Mass. 96, 99. *Wilson* v. *Davison,* 242 Mass. 237, 242. This is quite different from an attempt to prove by evidence of statements of the agent the extent and nature of his authority; that is not permissible. *Treasurer & Receiver General* v. *Macdale Warehouse Co.* 262 Mass. 588, 593. The evi-

dence of the conversation with Citron and Albert was admissible as bearing upon the liability of the defendant. These two with Sandler constituted the stockholders and directors of the defendant.  Conversation and conduct of all three indicated the Armstrong Company as the principal in the transaction and were competent. *North Anson Lumber Co.* v. *Smith,* 209 Mass. 333, 337–338.  *Vigeant* v. *Jeanne D'Arc Credit Union,* 271 Mass. 479.

Testimony of an officer of the Friend Company was admitted to the effect that having called the Armstrong Company on the telephone he talked with some one other than Sandler saying that he would buy building finish provided the prices were as low as prices of others and that the orders thus given should go as a credit on the account of the Friend Company against the Armstrong Company, and that he bought the building finish on these conditions.  This conversation was competent as tending to show that he believed the sales of lumber by the Friend Company were to the Armstrong Company and not to Sandler, and that he acted in good faith in the belief that he was dealing with the Armstrong Company through an authorized agent. *Mussey* v. *Beecher,* 3 Cush. 511, 516.  *Bascombe* v. *Inferrera,* 271 Mass. 296, 299.  Cases like *Dorchester Trust Co.* v. *Casey,* 268 Mass. 494, are quite distinguishable.

There was no error in the refusal of the trial judge to admit in cross-examination of the witness Thistle statements made by him in conference at the bench.  The judge knew what those statements were.  The offer of proof does not tend to show bias or interest on the part of the witness. It was a matter resting in the sound discretion of the judge and that discretion appears to have been wisely exercised. *Jennings* v. *Rooney,* 183 Mass. 577, 579.  *Commonwealth* v. *Klosek,* 262 Mass. 416, 419.

The motion of the Armstrong Company for a directed verdict in its favor was denied rightly.  There was ample evidence that the other two stockholders and directors of that company knew that Sandler had purchased lumber for it from the Friend Company.  If such purchases exceeded his authority, it was their duty as directors to renounce the

transaction in behalf of their company and failure to do so indicates ratification. *Thayer* v. *White*, 12 Met. 343. *Brigham* v. *Peters*, 1 Gray, 139, 147. *Lajoie* v. *Milliken*, 242 Mass. 508, 525–526. *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327, 330–331.

There was no error in the charge to the jury in respect to ostensible authority of Sandler to act for the Armstrong Company. In simple language capable of being easily understood the controlling principles of law were stated with sufficient accuracy. It is not necessary to go over it in detail. It need be said only that no reversible error is disclosed.

2. In the second case the judge directed a verdict in favor of the Armstrong Company against the Friend Company. No exception was saved. The Friend Company seasonably filed a motion for a new trial on the grounds that the verdict was (a) against the evidence and (b) against the weight of the evidence. It also filed a motion to set aside the verdict. There was failure to comply with Rule 48 of the Superior Court (1923) in that no copy of the motion was delivered or mailed to the adverse counsel on the day on which it was filed. Six days later such copy was so mailed. Motion was made to extend the time for the giving of such notice. This motion was granted. In this there was no error. It must be assumed that sufficient cause for granting it was proved to satisfy the mind of the judge. *Whitney* v. *Hunt-Spiller Manuf. Corp.* 218 Mass. 318. *Boston Morris Plan Co.* v. *Barrett*, 272 Mass. 487, 490.

The judge filed a statement in these words so far as material: ". . . I allow the defendant's motion for a new trial and to set aside the verdict. . . . My reasons . . . are as follows: . . . It was admitted that the defendant owed the amount of the verdict. It appears, however, from undisputed evidence, that the verdict in the cross suit for the Friend Lumber Company was for a balance due from the Armstrong Company after making allowance for the amount of the verdict against the Friend Company. It would be a manifest injustice to permit the verdict which was ordered by consent of parties to stand and thereby to allow the Armstrong Company to obtain the double credit.

I allowed all these motions in the exercise of what I considered as sound discretion."

It is provided by G. L. c. 231 in § 127 that the judge may "set aside the verdict in a civil action and order a new trial for any cause for which a new trial may by law be granted; but a verdict shall not be set aside except on written motion by a party to the cause, stating the reasons relied upon in its support . . ."; and in § 128, "Whenever a verdict is set aside and a new trial granted under the preceding section, the justice granting the motion for the new trial shall file a statement setting forth fully the grounds upon which the motion is granted . . . ." The requirement of § 127 means that the reasons stated in the motion alone may be considered by the judge and upon those his decision must be based. *Peirson* v. *Boston Elevated Railway*, 191 Mass. 223, 229–230. *McDonnell, petitioner*, 197 Mass. 252, 255. *Parker* v. *Lewis J. Bird Co.* 221 Mass. 422, 426. The provisions of these two sections are a constitutional exercise of power by the General Court and do not impair the essentials of the right to trial by jury secured by the fundamental law. *Peirson* v. *Boston Elevated Railway*, 191 Mass. 223, 230–231. *Opinion of the Justices*, 207 Mass. 606. *Edwards* v. *Willey*, 218 Mass. 363, 365. *Anti* v. *Boston Elevated Railway*, 247 Mass. 1, 4–5. These sections narrow the earlier power of the trial judge to set aside a verdict upon his own motion for any cause allowed by law. *Ellis* v. *Ginsburg*, 163 Mass. 143.

It is the general principle that a defendant who has a claim against one who is suing him may pursue his remedy as he chooses. He may bring an action to enforce his claim. He may rely upon set-off or recoupment, if applicable. He cannot be compelled to adopt one course rather than the other. *Minor* v. *Walter*, 17 Mass. 236. *Cary* v. *Bancroft*, 14 Pick. 315. *Dehon* v. *Stetson*, 9 Met. 341. *Gilmore* v. *Williams*, 162 Mass. 351. *Bowen, Inc.* v. *G. R. Armstrong Manufacturers' Supplies, Inc.* 241 Mass. 444, 448, and cases cited. The statement of reasons for setting aside the verdict filed by the trial judge does not mention specifically any one of those stated in the motion. But its tenor is

plain.   The statement means that the Armstrong Company had already accepted a credit on the account in the first case, being the action against it, for the entire amount claimed to be due to it from the Friend Company in the second case and that by some mistake, misapprehension or misunderstanding that fact was overlooked when this second case was sent to the jury for a verdict.   Manifestly if that were so, a verdict for the plaintiff in this second case would be against the evidence and against the weight of the evidence.   There is nothing in the decisions just cited requiring a contrary result.   Since the cases at bar were tried together, the evidence was to be considered in either or both cases so far as pertinent to the issues.   It must be presumed that there was sufficient basis in fact to support the statement filed by the judge.   The trial in this case proceeded upon a summary of his understanding made by the judge in open court to the effect that the Friend Company admitted that it owed the amount claimed by the Armstrong Company "in some way . . . either by way of paying it in cash or else by a credit."   That admission was in terms broad enough to apply to either case.   That expression by the judge of his understanding was not challenged as to its correctness by either party.   It must be accepted as true.   The ordering of the verdict in favor of the Armstrong Company must have been grounded on the belief of the judge that the amount admitted to be due had not been credited on the account in the other action.   When it came to his attention that that amount had already been credited in the account which formed the basis of the other action, plainly the ordering of that verdict was against the evidence.   It is of no consequence that the declaration in its account annexed in the other action did not show this credit.   If it was in truth so credited that neither charges nor credits to that aggregate amount appeared on the account annexed, the judge could not rightly shut his eyes to that fact.   *Shields* v. *Nathans,* 268 Mass. 360.   Although not expressed with the utmost technical conformity to the terms of said §§ 127, 128, the meaning of the statement filed by the judge is not open to misconstruction.   It signi-

fies that in view of all the circumstances the verdict which he had ordered had no real support in evidence and ought not to stand as the basis of a judgment in a court of this Commonwealth. Any possible misconstruction would have been avoided if the conclusion had been stated in unequivocal terms that the motion was granted on the second ground therein specified. But that conclusion is inevitable from the facts recited, and is their unmistakable import.

There is nothing at variance with this result in *Wright* v. *Apikian*, 270 Mass. 302, and cases there reviewed, or in *Dziegiel* v. *Westford*, 274 Mass. 291. In those cases the trial judge in attempting to set aside the verdict went outside the grounds alleged in the motion or made an erroneous ruling of law or otherwise failed to comply with the essential requirements of said §§ 127 and 128.

*Exceptions overruled in both cases.*