## COMMONWEALTH vs. JOHN P. CONNOLLY.

Suffolk.    January 6, 1941. — March 31, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, & COX, JJ.

*Bribery. Public Officer. Clerk of Court. Evidence*, Relevancy and materiality. *Practice, Criminal*, Exceptions: general exception, whether error harmful; Discretionary control of evidence; Argument by counsel; Requests, rulings and instructions; Charge to jury. *Error*, Whether harmful.

Conviction under G. L. (Ter. Ed.) c. 268, § 8, is justified if the accused acted through an agent in requesting or accepting the gift, gratuity or promise described in the statute, and even if the person from whom

the bribe was requested or accepted had no personal knowledge that the accused himself was a party to the "agreement" or "understanding" under which the bribe was given.

A clerk of the Superior Court for a county is a "county officer" within § 8 of G. L. (Ter. Ed.) c. 268.

Where, at the trial of an indictment against a clerk of the Superior Court for a county for violation of § 8 of G. L. (Ter. Ed.) c. 268, there was ample evidence that the defendant through an agent sought and accepted, from employees in the clerk's office whose tenure was subject to his discretion, sums of money with the agreement or understanding that the persons making the payments should not be discharged, the admission of evidence of other collections made for him, long after the transactions charged in the indictment, for a "good will fund" and for a fund for a subsequent campaign for reëlection, and as to certain loans, if error, was immaterial and harmless.

Evidence of dealings of agents, used by a clerk of the Superior Court to request and accept bribes in violation of § 8 of G. L. (Ter. Ed.) c. 268, was competent.

At a trial for requesting or accepting bribes in violation of G. L. (Ter. Ed.) c. 268, § 8, it was within the discretion of the judge to admit evidence of dealings with an alleged agent of the defendant before evidence of the agency was introduced.

At the trial together of two indictments, one for violation of § 8 of G. L. (Ter. Ed.) c. 268, against a clerk of the Superior Court and the other for conspiracy to obtain bribes against the clerk and an agent alleged to have been employed by him in such violations, a general exception to the admission of evidence, offered by the Commonwealth, of statements by the alleged agent, competent for certain purposes only under both indictments but not offered for limited purposes, nor limited, nor requested by the defendant to be limited, was overruled.

At the trial of an indictment charging violation of G. L. (Ter. Ed.) c. 268, § 8, upon the district attorney's ridiculing in his closing argument a reason testified to by the defendant for having resigned his office during pendency of proceedings for his removal, the judge properly refused to reopen the evidence to permit the defendant to testify in further elaboration of his reasons; and in the circumstances no error appeared in refusing to stop comments by the district attorney in his argument respecting that reason.

At the trial of an indictment against a clerk of the Superior Court for violation of G. L. (Ter. Ed.) c. 268, § 8, in requesting or accepting bribes from certain employees subject to removal by him, it was proper to exclude evidence that other employees were not solicited.

Evidence that a solicitor of a bribe from one of several employees of a clerk of the Superior Court was acting as agent of the clerk had a tendency to show that the solicitor also was acting as agent in soliciting bribes from other employees at about the same time.

After a witness for the Commonwealth in cross-examination had denied an accusation by the defendant respecting an immaterial matter and the defendant had testified to the truth of the accusation, the defendant's counsel was properly stopped in an argument to the

jury that the defendant's testimony required the Commonwealth to recall that witness or to call another witness to contradict the defendant.

In the circumstances, no wrong was done to a clerk of the Superior Court, at the trial of an indictment charging him with soliciting bribes from his employees in violation of § 8 of G. L. (Ter. Ed.) c. 268, in refusing to stop the district attorney's referring to him as "Caesar."

A defendant in a trial of an indictment was not harmed by a refusal to grant a request for an instruction, which, although correct in form, might have misled the jury, and which the judge gave in substance and in a form sufficiently favorable to the defendant.

Two INDICTMENTS, found and returned on December 8 and 13, 1939.

The trial in the Superior Court was before *Leary*, J.

*A. R. Sisson*, (*L. P. McHugh & W. J. Lee* with him,) for the defendant.

*F. T. Doyle*, Assistant District Attorney, for the Commonwealth.

LUMMUS, J.   These are two indictments against a former elected clerk for the Superior Court for civil business in the county of Suffolk, for corruptly requesting and accepting bribes. G. L. (Ter. Ed.) c. 268, § 8.   The first indictment, numbered 626, was in four counts, each of which alleged that the defendant "being a county officer, to wit" such clerk, "did corruptly request and accept from" a named person a specified sum of money "under an agreement and with the understanding that his, the said John P. Connolly's vote, opinion, judgment and decision should be given in a particular manner, and upon a particular side of a question, cause and proceeding which was then pending, and which might by law come and be brought before him, the said John P. Connolly, in his official capacity" as such clerk and that in that capacity "he, the said John P. Connolly, should make a particular nomination and appointment." Specifications filed as to each count set forth that the defendant as clerk had final authority to hire, discharge and continue in employment certain employees attached to his office, and that in consideration of the payment of a specified amount of money to a third person named, he promised to employ or continue in employment the person paying the money.   The second indictment, numbered 646, origi-

nally contained eleven similar counts which were accompanied by similar specifications, but only eight of these latter counts were submitted to the jury. A summary of the counts submitted to the jury appears in a footnote.[1]

The change in the mode of selection of clerks of courts, from appointive to elective, was made by art. 19 of the Amendments to the Constitution, approved by the people on May 23, 1855, which reads: "The legislature shall prescribe, by general law, for the election of . . . clerks of the courts, by the people of the several counties, . . . for such term of office as the legislature shall prescribe." *Opinion of the Justices*, 117 Mass. 603. *Commonwealth* v. *Mather*, 121 Mass. 65. G. L. (Ter. Ed.) c. 221, § 3, provides for a clerk for the Superior Court of the county of Suffolk for civil business, who shall hold office for six years beginning with the first Wednesday of January following his election. In 1934 and again in 1940 such a clerk was to be chosen in Suffolk. c. 54, §§ 62, 155. The person elected in 1934 having died, the defendant was elected at the biennial election in November, 1936, to serve during the unexpired term, or until January, 1941, as provided by c. 54, § 142. He qualified and took office on December 1, 1936. He continued in office until he resigned on July 19, 1939, on the eve of a hearing under c. 211, § 4, for his removal from office upon a petition which was based in part upon the transactions upon which these indictments are based.

As clerk, the defendant had no power to appoint or remove any of the fourteen assistant clerks provided for

| [1] Indictment. | Name of alleged briber. | Date of alleged bribe. | Amount of alleged bribe. |
|---|---|---|---|
| 626,  Count 1 | John E. Noonan | Jan. 25, 1937 | $300 |
|       Count 2 | Marguerite W. Kennedy | Jan. 15, 1937 | 200 |
|       Count 3 | Mary M. Cunningham | Feb. 11, 1937 | 250 |
|       Count 4 | Louise V. Crowley | May 18, 1937 | 250 |
| 646,  Count 1 | Anna E. Pugh | Jan. 17, 1937 | 200 |
|       Count 2 | Edward J. Kelley | Jan. 28, 1937 | 300 |
|       Count 3 | Gertrude Cotter | Jan. 19, 1937 | 200 |
|       Count 4 | Catherine R. Gibbons | Jan. 21, 1937 | 200 |
|       Count 5 | Mary V. Brophy | Jan. 22, 1937 | 200 |
|       Count 6 | Martha E. Friel | Jan. or Feb. 1937 | 300 |
|       Count 7 | Thomas F. Brophy | Jan. or Feb. 1937 | 250 |
|       Count 9 | Mary C. Brogie | March 13, 1937 | 250 |

by G. L. (Ter. Ed.) c. 221, § 6, which gives the power to appoint them to the justices of the Superior Court. But by § 102 the defendant as clerk was authorized to expend for clerical assistance such amounts as might be approved by the officers having the powers of county commissioners in Suffolk. Under that section he maintained, as had his predecessors, a clerical force of approximately twenty-one men and sixty-nine women, paid in the aggregate more than $160,000 a year. The members of this clerical force had the protection of no civil service law, but were wholly subject to the will of the defendant as to employment and discharge. Soon after taking office the defendant discharged about thirty employees and replaced them, in large part at least, with his political friends and campaign workers.

There was no direct evidence of any payment of money to the defendant. But it appeared, without dispute, that William T. Conway was the defendant's intimate friend and political supporter, who had charge under the defendant of the campaign in 1936 which resulted in the defendant's election, who was the constant companion of the defendant in his living rooms at a hotel from which he conducted his campaign, who accompanied the defendant on a vacation after the election, and who during the defendant's occupancy of the position of clerk was almost a daily visitor to him and to his office. There was undisputed evidence that payments of money were made to Conway in the amounts specified in the counts and specifications already stated in a footnote, by the persons named therein. Conway's explanation of these payments is in substance that the employees voluntarily helped Conway discharge debts that he had incurred in the campaign, in order to ingratiate themselves with Conway and Connolly. Both Conway and Connolly testified that the latter knew nothing of these payments until after the petition for his removal had been filed in 1939.[1]

There was ample evidence that Conway received each sum of money stated in the various counts under an agree-

---

[1] See 304 Mass. 676. — REPORTER.

ment and with an understanding that the employee who paid would not be discharged. We take the evidence upon the counts of the first indictment in order. (1) John E. Noonan, an employee for many years, testified that in January, 1937, he was summoned by telephone to the clerk's private office. There he found Connolly and Conway. Inquiring of Connolly, "Did you want to see me, Mr. Clerk?" Connolly answered, "No, [but] Bill [Conway] does." Conway said, "I will see you outside at five o'clock." At that time, Noonan saw Conway, and the latter asked whether Noonan wished to keep his job. Noonan answered that he did. Conway said, "You will have to come across with $300." It was arranged that Noonan should borrow the money and pay it in a few days, and Noonan paid it accordingly. (2) Margaret W. Kennedy, named in the indictment as Marguerite W. Kennedy, an employee for many years, testified that on January 14, 1937, Conway told her that Connolly had incurred much expense in the campaign and needed money. Conway told her she was to pay $200 as a guarantee for her position. She paid it to him the next day. Later, she testified, Conway named a number of other women employees, with the amount that each was to pay, and asked her to tell them that Connolly needed money, and that those women who paid the designated amount of money would be "privileged girls," their jobs were secure by so paying. The names so given her were Mary C. Brogie, Martha E. Friel, Gertrude Cotter, Mary V. Brophy, Catherine R. Gibbons, and Anna E. Pugh. She had a conversation with each with reference to what Conway had told her.

(3) Mary M. Cunningham, an employee for many years, testified that after she was discharged by Connolly on February 4, 1937, she asked the help of her brother-in-law, a police officer named Keegan. She with Keegan saw Conway, who said he would see what he could do. The next day Conway telephoned that there had been a mistake, since she had supported Connolly in the campaign, and that she was to have her position back. Keegan testified that afterwards he met Conway on the street. Conway told him

everything was all right, but it would cost him $250. Miss Cunningham paid Keegan $250, and he paid it to Conway. Later she resumed her work. (4) Louise V. Crowley, an employee for many years, testified that she was discharged by Connolly late in April, 1937. She gave $250 to her brother John J. Crowley on May 18, 1937. Her brother testified that about ten days after his sister was discharged, he talked with Conway, and then with Connolly. Connolly gave him no encouragement, but said he would consider the question of restoring the sister to work. Later Conway saw Crowley, and said that it would cost $250 to get the sister back to work. The next day Crowley got $250 from his sister, and gave it to Conway in the toilet in the building where Crowley had his office, saying "Here is what you are looking for." Shortly afterwards the sister was put back to work.

Passing to the evidence upon the counts of the second indictment, we take them in order. (1) Anna E. Pugh, an employee for many years, testified that after a conversation with Miss Kennedy, the terms of which were excluded, she paid Miss Kennedy $200 on January 17, 1937. Miss Kennedy testified that she paid it to Conway. (2) Edward J. Kelley, an employee for many years, testified that in the latter part of January, 1937, Conway told him that certain employees were to be asked to pay money to help defray the expenses of the campaign, that the employees who were asked to pay were to be retained, that it was intended that Kelley should contribute $300, and that he would have to get the $300. Conway said he would see Kelley the next day to learn what he could do. Within a day or two Conway asked Kelley whether Kelley had anything for him. Kelley answered that he had, and Conway said he would see him downstairs. They were then in the clerk's office. Kelley went downstairs, and there gave Conway $300. (3) Gertrude Cotter, an employee for many years, testified that prior to January 18, 1937, she had a conversation with Miss Kennedy about paying money, and after Miss Kennedy introduced her to Conway Miss Cotter gave $200 to him on January 19, 1937. Con-

way told her at the time that as long as Connolly was in office she was secure. (4) Catherine R. Gibbons, an employee for many years, testified that after a conversation with Miss Kennedy on January 21, 1937, she paid $200 to Miss Kennedy. She took Miss Kennedy's word for it, that if she paid she would retain her position, and that if she did not pay she would be discharged. Miss Kennedy testified that she paid the money to Conway.

(5) Mary V. Brophy, an employee, did not testify, but she was one of the women named by Margaret W. Kennedy in the list of those she approached at the request of Conway in January, 1937. The witness Kennedy testified that Mary V. Brophy was to pay $250, and that she paid Conway in the presence of the witness. Conway testified that he got the money. (6) Martha E. Friel, an employee for many years, testified that in January, 1937, after a conversation with Miss Kennedy, she paid $300 to her. A few days after the money was paid Conway said to her that she had nothing to worry about. Miss Kennedy testified that she paid the money to Conway. (7) Thomas F. Brophy, an employee for many years, testified that in January or February, 1937, Conway told him in the office that he would like to see Brophy outside in the corridor. Outside, Conway said to Brophy that it was going to cost him $250 to hold his job, and gave him two days to get the money. Brophy borrowed it and on request of Conway they went downstairs to the men's toilet where Brophy paid it to him. Conway said, "You are all right now." (9) Mary C. Brogie, an employee for many years, testified that after a conversation with Miss Kennedy in March, 1937, she got $250 and gave it to Conway the next day in the presence of Miss Kennedy. A few days later Conway told Miss Brogie that everything would be all right, that she had nothing to worry about.

There was enough evidence, apart from hearsay declarations by Conway that the defendant was being paid the money extorted from employees, to warrant a finding that Connolly received the money and accepted it as a bribe, and that Conway was his agent to request and accept

bribes. The relationship between them was so close that slight additional evidence would warrant a finding that they were acting in concert, that each knew what the other was doing, and that Connolly was the principal and Conway the agent. The conversation of both Connolly and Conway with John E. Noonan, already described, was evidence of joint action in extorting money for jobs. Edward J. Kelley testified that in April, 1939, when he and Connolly were talking about a proposed campaign fund for 1940 to be raised among the employees, Connolly said that all employees would be expected to contribute according to their ratings, and that the $300 that Kelley had already contributed would be deducted from his assessment. The only contribution that Kelley had made was the payment of $300, already described, that Conway extorted from him. What Connolly said to him in 1939 showed knowledge of that payment, although both Connolly and Conway testified that Connolly had no such knowledge until later in 1939. Besides, the fact that Connolly resigned his office on the eve of a hearing on a petition to remove him based in part upon the same transactions upon which these indictments are based is evidence of consciousness of guilt.

The defendant contends that since he was not present in any sense when the various payments were made, nor, with the possible exceptions already noted, when there was talk of paying money for jobs, he could have been nothing more than an accessory to the felony of which he was convicted as a principal. Under G. L. (Ter. Ed.) c. 268, § 8, the section under which the indictments were drawn, no one but a public officer can be a principal. To be guilty, he must corruptly either "request" or "accept" a gift, gratuity or promise such as is described in the statute. *Commonwealth v. Hogan*, 249 Mass. 555, 561, 564. *Commonwealth v. Albert*, 307 Mass. 239, 243. Whether he does so personally or by an authorized agent is immaterial. *Dolan v. Commonwealth*, 304 Mass. 325, 339. See also *Greenburg v. Gorvine*, 279 Mass. 339, 342. The interposition by a public officer of an agent or "bagman" (to use the popular expression) as

a screen against any personal contact with those who voluntarily or under some compulsion are disposed to bribe him, does not reduce him to an accessory. To be guilty, the public officer must do the acts already stated "under an agreement or with an understanding" such as the statute denounces. The person from whom a bribe is requested or accepted need not have personal knowledge that the public officer is a party to such an agreement or understanding. The request or the acceptance may be by an authorized agent; or the acceptance by the public officer may be an acceptance from an intermediary without the knowledge of the person making the gift or gratuity. The evidence in this case warranted a finding that the defendant both requested and accepted bribes through an agent, and further that he accepted them personally from an intermediary, all under an agreement or with an understanding within the statute.

What has been said disposes of the defendant's contention that there is a variance between the specifications (*Commonwealth* v. *Albert*, 307 Mass. 239, 244) which set forth an agreement or understanding to which the defendant was a party, and the evidence which in general showed no talk upon the matter of paying money for jobs between the defendant and those who paid money. An agreement or understanding with an authorized agent of the defendant was equivalent to one with the defendant, to say nothing of the permissible inference that the defendant himself accepted the money from Conway upon the same agreement or understanding.

The indictments allege that the defendant as clerk was a "county officer." G. L. (Ter. Ed.) c. 268, § 8, applies to "a legislative, executive, judicial, county or municipal officer." The defendant contends that he was not a county officer, but a judicial officer. He was an officer of a court, but he was not a judicial officer, for he had no judicial functions. The fact that his office was so closely related to the court that the power to remove him could be vested in a court, does not show him to be a judicial officer. *Opinion of the Justices*, 300 Mass. 596. His official duties were lim-

ited to one county, his salary was paid by that county, he gave bond to the county treasurer, and his office was elective by the voters of that county. We think that was enough to make him a county officer within the statute. See· *Opinion of the Justices*, 167 Mass. 599; *Opinion of the Justices*, 303 Mass. 615, 620. *Attorney General* v. *Tufts*, 239 Mass. 458, 478–481; *Attorney General* v. *Pelletier*, 240 Mass. 264, 294. We do not suggest that the defendant could not be convicted even if his office were improperly classified in the indictment. *Commonwealth* v. *Lapham*, 156 Mass. 480, 483.

In all, more than four hundred sixty-six exceptions were taken during the trial. All that have been included in the assignment of errors and argued have been considered. Many of them related to the admission or exclusion of evidence. The cases come here upon an appeal, a summary of the record, a transcript of the evidence, and an assignment of· errors, under G. L. (Ter. Ed.) c. 278, §§ 33A–33G. Assignment 2 assails the admission of the evidence of the defendant's private secretary as to her doings in 1938 and 1939 in collecting from other employees a so called good will fund to help the defendant defray the continual expenditures for tickets, advertisements and contributions that are said to be expected of an elective officer. The indictments now in question were tried with others, against the defendant and Conway, and the evidence may have been relevant to some of them. None of this evidence had any tendency to prove the guilt of the defendant upon the present indictments, which relate to transactions all of which were closed as early as May, 1937. Whether the evidence was properly received or not, it had no bearing on these indictments, and was harmless as to them. The same consideration applies to assignments 3, 16, 17, 18, 22, 25, 32, 41, 42 and 43, which deal with evidence of the collection of money in 1938 and 1939 from employees for a campaign fund for the expected campaign of 1940. Assignments 20, 21 and 23 relate to several employees who, in 1939, at the request of the defendant, borrowed money and gave it to the defendant, who under-

took to assume the payment of the loans. These loans had nothing to do with the crimes charged in the indictments in question, which were complete long before the loans were made. If there was error as to any of these matters, it was not material to the indictments before us.

Assignments 4 to 15 inclusive, 19, and 31 attack the admission in evidence of dealings of the employees paying the bribes or their agents with Conway and Margaret W. Kennedy. The objection is that the defendant was not present. But the case was tried on the theory that Kennedy was a tool of Conway, and Conway the agent of the defendant, and further that the money paid went to the defendant. Sufficient evidence appeared, as has been shown, to support that theory. That made evidence of dealings with Kennedy and Conway competent. It is unimportant whether at the time the evidence of those dealings was admitted agency had been fully proved. It is sufficient that before the testimony was closed evidence to support that theory was in the case. The whole case could not be proved in one breath, and the order of proof of the different elements that in combination made up the case for the Commonwealth was within the control of the judge. *Commonwealth* v. *Tucker*, 189 Mass. 457, 467. *O'Brien* v. *Keefe*, 175 Mass. 274, 278, 279. *Ellis* v. *Thayer*, 183 Mass. 309. *Commonwealth* v. *Johnson*, 199 Mass. 55, 59. *Alden Bros. Co.* v. *Dunn*, 264 Mass. 355, 362.

Two exceptions under these assignments may need special discussion. John E. Noonan, subject to the defendant's exception, was permitted to testify that Conway told him that the money he paid "was going to the clerk," the defendant. Margaret W. Kennedy, subject to the defendant's exception, was permitted to testify that Conway told her that he gave to the defendant the money paid by her for her position. An indictment against Conway and the defendant for conspiracy to obtain bribes was tried with the present indictments. Apparently the evidence in question was admissible upon that indictment under the familiar rule applicable to conspiracy cases. *Commonwealth* v. *Waterman*, 122 Mass. 43, 59. *Commonwealth* v. *Smith*, 163

Mass. 411, 418. *Commonwealth* v. *McDermott*, 255 Mass. 575, 581, and cases cited. *Commonwealth* v. *Coshnear*, 289 Mass. 516, 526. *Commonwealth* v. *Benesch*, 290 Mass. 125, 132, 133. A general exception to the admission of evidence cannot be sustained if it was admissible for any purpose against any adverse party in any case on trial. *Solomon* v. *Dabrowski*, 295 Mass. 358, 359. *Curtin* v. *Benjamin*, 305 Mass. 489, 493, 494. Furthermore, on the very indictments now before us the evidence in question was admissible to show that the employee paying the money was dealing with Conway as an agent and was relying upon an agreement or understanding purporting to be that of the defendant and not that of Conway only. *Friend Lumber Co. Inc.* v. *Armstrong Building Finish Co.* 276 Mass. 361, 367. Of course the question remained whether Conway was actually authorized to request or accept bribes for the defendant, and the statements of Conway were not competent evidence as to that question upon these indictments. *Newburyport Institution for Savings* v. *Brookline*, 220 Mass. 300, 306. *Treasurer & Receiver General* v. *Macdale Warehouse Co.* 262 Mass. 588, 593. *Friend Lumber Co. Inc.* v. *Armstrong Building Finish Co.* 276 Mass. 361, 367. *Hennessey* v. *Cities Service Refining Co.* 282 Mass. 487, 489. The defendant on request had the right to have the use of the evidence in question limited to the purpose for which it was competent. No such request was made. Neither did the judge limit the application of the evidence. The evidence was not expressly offered for a limited purpose. It is not necessary in this case to decide whether under these circumstances the jury might consider the evidence, though it was hearsay, upon the question whether Conway acted under authority from the defendant. *Solomon* v. *Dabrowski*, 295 Mass. 358. *Hovanesian* v. *Boyajian*, 296 Mass. 165, 168. *Blackman* v. *Coffin*, 300 Mass. 432, 437. In *Donaldson* v. *New York, New Haven & Hartford Railroad*, 188 Mass. 484, *Bloustein* v. *Shindler*, 235 Mass. 440, *Rankin* v. *Brockton Public Market, Inc.* 257 Mass. 6, 10, 11, and *Dunlea* v. *R. D. A. Realty Co.* 301 Mass. 505, 506, 507, the evidence was expressly admitted for a limited purpose.

The defendant testified that he resigned his office to save two named holders of important public offices "from being dragged into the case, being libeled and scandalized." How they could be involved did not appear. The judge ordered that testimony struck out. The defendant indicated no desire to enlarge upon the reason so given for resigning. At the close of the evidence the judge reversed his earlier ruling, and directed the jury to consider that testimony as evidence. Again the defendant indicated no desire to enlarge upon the reason so given for resigning. But later, when in argument the assistant district attorney held up that reason to ridicule, the defendant excepted to the refusal of the judge to reopen the case for further evidence. Obviously there was no error in this. In argument the assistant district attorney declared that the defendant was an ingrate in bringing into his testimony the name of one of those holders of public office who, as the evidence showed, once appointed the defendant as an assistant in his office. There was no error in permitting that statement to be made.

The judge rightly excluded evidence from seventeen employees that neither the defendant nor any other person had ever asked them to pay money in order to retain their positions. The Commonwealth did not contend that the defendant tried to extort bribes from all his employees. The fact that bribes were not sought from some had no substantial tendency to show that they were not sought from others.

The evidence of the employees who testified to paying money to keep their positions was admitted, generally speaking, subject to the limitation that it was received only upon the counts in which the particular employee was named. At the close of the evidence for the Commonwealth the judge broadened the scope of this evidence already admitted by ruling that it was to be considered on all indictments and counts upon the question whether Conway was authorized to request and accept bribes on behalf of the defendant. To this the defendant excepted, but he did not express any desire to cross-examine the witnesses further because of this change of ruling. He proceeded to put on his evidence in defence. The alleged bribes covered a

comparatively short period of time early in 1937, and Conway figured in them all. Evidence that in one of them he acted as agent for the defendant had a tendency to show that he bore the same relationship in others. We find no error.

The witness John E. Noonan, named in the first count of the first indictment, gave material evidence against the defendant. On cross-examination he denied that the defendant as clerk had been compelled to reprove him at the request of the district attorney for his conduct in the corridors of the court house during a criminal trial. This may have been permissible cross-examination to test the reliability of the witness. But since the subject matter of that cross-examination was immaterial to the issues in the case, the defendant could not of right contradict the denial of the witness by testimony. *Hathaway* v. *Crocker,* 7 Met. 262, 266. *Harrington* v. *Lincoln,* 2 Gray, 133. *Lane* v. *Bryant,* 9 Gray, 245. *Kaler* v. *Builders' Mutual Fire Ins. Co.* 120 Mass. 333, 336. *Commonwealth* v. *Dunan,* 128 Mass. 422. *Jordan* v. *McKinney,* 144 Mass. 438. *Gorham* v. *Moor,* 197 Mass. 522, 525. *Attorney General* v. *Hitchcock,* 1 Exch. 91. See also *Kavanaugh* v. *Colombo,* 304 Mass. 379, 381; *Klein* v. *Keresey,* 307 Mass. 51, 52–53; *Goodyear Park Co.* v. *Holyoke,* 298 Mass. 510, 512. Compare *Commonwealth* v. *Hunt,* 4 Gray, 421. But the defendant was permitted to testify that the accusation that Noonan had denied was true. In his argument counsel for the defendant said that the defendant's testimony required the Commonwealth either to put Noonan on the stand again, or to call the district attorney as a witness to contradict the defendant. This argument was rightly stopped by the judge. Noonan had given his testimony on the matter. He and the defendant could not be expected and should not be permitted to take turns in contradicting each other on the same point to the end of the case. There was no occasion to summon the district attorney to cast his testimony into the scale. The defendant had no right to set up a false issue and insist upon trying it.

There was evidence that in 1939, at a meeting of the em-

ployees to consider the raising of a campaign fund for the expected campaign of 1940, the defendant made a speech in which he said in substance that the desire for public jobs is not new, that in ancient times factions sought the power of public office, that Caesar was stabbed "because the other fellows wanted the jobs," that politics is a bloodless war in which there is no sentiment, that the employees in the clerk's office had long been chosen not because of what they knew but because of whom they knew, that employees had contributed to campaign funds from the beginning of time, that employees in the clerk's office have no permanency of employment, and that the clerk has a right to employ people who are worthy and upon whom he can depend for fidelity. Commenting on this speech in his argument, the assistant district attorney said, "Didn't he make it plain in that speech . . . that he, Caesar, Caesar Connolly, was king? They were his economic slaves." Later, referring to a journey taken soon after the election, he said, "Conway went south with Caesar." Counsel for the defendant objected to the use of that name, but the judge permitted it. The comparison with Caesar was not wholly inapt. We think the defendant was not wronged. *United States* v. *Heitler*, 274 Fed. 401, 410. *State* v. *Small*, 78 N. H. 525, 530. *Simmerman* v. *State*, 16 Neb. 615, 624. *Alder* v. *Commonwealth*, 215 Ky. 613, 629. *State* v. *Genna*, 163 La. 701, 717. *Meyer* v. *State*, 176 Wis. 184, 187, 188. *Commonwealth* v. *Crittenton*, 326 Penn. St. 25. We must not be understood, however, as approving the application of insulting names to parties or witnesses in argument.

In argument the assistant district attorney referred to the honorable political career of a distinguished Bostonian of an earlier day, whose given name was the same as one of the names of the defendant, and said that when that man held office there was no sign "Jobs for sale"; neither did he resign under fire, but died in office. Exceptions were taken to the refusal of the judge to stop that argument. See *Commonwealth* v. *Cabot*, 241 Mass. 131, 148. The man to whom reference was made may be said to have become a historical character familiar to the average jury in Boston. We think

there was no error in permitting the assistant district attorney to compare his standard of public service with that of the defendant. *State* v. *Genna*, 163 La. 701, 717. *Tyree* v. *Commonwealth*, 212 Ky. 596, 600, 601. *Berry* v. *Commonwealth*, 227 Ky. 528, 548, 549. *State* v. *Davis*, 83 N. H. 435, 437, 438. *State* v. *McAlister*, 133 S. C. 99. Wigmore, Evidence (3d ed. 1940) § 1807. Moreover, the judge made harmless any possible error, by instructing the jury during his charge to disregard the argument in question.

The remaining assignments of error relate to the charge. Assignment 38 so far as it relates to exception 448 has no bearing upon the indictments before us. So far as it relates to exception 449 we are not referred to the passage to which exception was taken. The exception seems to relate to the instruction in substance that on the question whether the defendant authorized Conway to request or accept bribes the evidence of the several employees who paid money might be considered in all the cases. This was merely a repetition of the ruling made at the close of the evidence for the Commonwealth, already discussed, and was not erroneous.

Assignment 40 is to the refusal to give the defendant's requested instruction numbered 23, which read: "The receipt of money by the defendant Conway in the name of the defendant John Patrick Connolly, constitutes no evidence against the defendant Connolly, unless you find that the defendant Connolly had previously authorized Conway to act for him to receive this money." This requested instruction, though correct on close analysis, might have misled the jury, for it ignored the possibility of convicting the defendant for accepting the money under an agreement or with an understanding such as is denounced in the statute, even though Conway had received it without previous authority. But although the judge refused to give the requested instruction in terms, he did give it in substance. His instruction was sufficiently favorable to the defendant.

Upon each indictment the entry will be

*Judgment affirmed.*