COMMONWEALTH *vs.* JAMES JENKS & another.

Suffolk. Nov. 24, 1884. — Jan. 7, 1885. FIELD, C. ALLEN, & COLBURN, JJ., absent.

A motion to quash an indictment, "because the same is uncertain, indefinite, and insufficient," does not assign "specifically the objections relied on," within the Pub. Sts. c. 214, § 25.

An indictment, alleging the larceny of "divers promissory notes," of a certain value, of the property of a person named, sufficiently charges the larceny of bank-bills.

Under an indictment against two persons jointly for larceny, one only may be convicted.

An indictment for the larceny of "divers promissory notes" is sustained by proof of stealing bank-bills.

A. asked B. to bet money as to whether A. or C. would win in shaking dice on a counter. B. produced his money, placing part of it on the counter and keeping the other part in his hand, and bet that A. would be the winner. The dice were not shaken, but A. immediately seized the money, both that on the counter and that in B.'s hand, and ran away with it. *Held*, that A. was guilty of larceny, and not of fraudulently obtaining property by a game, under the Pub. Sts. c. 203, § 65.

INDICTMENT against James Jenks and Elisha Douglass, charging them with the larceny, on January 17, 1884, at Boston, of

divers promissory notes of the amount and value of $50, of the property of one John McGrath. Trial in the Superior Court, before *Staples*, J., who allowed a bill of exceptions, in substance as follows :

Before the jury were empanelled, the defendant filed a motion to quash the indictment, "because the same is uncertain, indefinite, and insufficient." The judge overruled the motion; and the defendants excepted.

McGrath was called as a witness by the government, and testified that the property stolen from him was certain national bank bills in the usual form, of the amount and value, in all, of fifty dollars. The defendants asked the judge to rule that such bank-bills would not be covered by the indictment; and that there was a variance. The judge ruled otherwise, and admitted the testimony ; and the defendants excepted.

The contention of the government was, that the two defendants, acting in concert and as confederates, stole from McGrath the money described in the indictment, on the day named therein, at a drinking-saloon in Boston.

Morris Kylie testified for the government, that he saw Jenks at West Newton three weeks before, and heard him say to McGrath that he wanted a settlement.

Dennis Connors testified for the government, that he saw Douglass and McGrath go into a saloon together; that he saw Douglass come out, McGrath following, and saying that he had lost fifty dollars; that he saw another man, whose face he did not see; that after Douglass was arrested he said he would give up the money if the old man would go back to the store.

Joseph H. Knox, an officer, testified for the government, as follows : "I arrested Douglass the same day. I asked him if he had McGrath's money. He said Jenks had it. I searched him, and found two dollars on him."

One Lynch, an officer, testified for the government, as follows : "I know both the defendants. I arrested Jenks the next day. Searched for him the day before, and could not find him. I have always seen Douglass and Jenks going together."

McGrath testified for the government as follows : "I reside in Michigan, and am stopping at West Newton. On January 17, 1884, I came to Boston on the Lowell Railroad ; and, on leaving

the Lowell depot to go to the West Newton depot, I met the defendant Douglass on the street, and went with him to a saloon. I lost at the saloon one twenty-dollar bill and three ten-dollar bills, all United States national bank bills. I met Douglass in the street near to the depot. He spoke to me. He said I looked like a man who had bought some goods of him. He called me by another name. I told him that was not my name. He asked what was my name. I told him. He then told me he would show me the depot. He took me into a saloon and gave me a cigar and a glass of whiskey. Douglass and another man began to throw dice on the counter for the drinks. They quarrelled, and wanted me to make peace between them. They began to bet. I pulled out my money to bet and make peace between them. I took it out to bet between them. Douglass wanted me to bet. I played no dice at all. I took out fifty dollars and put a twenty-dollar bill out of it on the counter, and had the rest in my hand, and there was no playing after that. I was going to bet. Douglass took the money out of my hand and also that on the counter, and ran away. They did not shake any dice after I said I would bet. The other man, whom I now think to be the defendant Jenks, stayed. I followed Douglass up. No dice were shaken at all on my money. No one else took out fifty dollars or any sum."

On cross-examination, he testified as follows: " I met Douglass on the street. He spoke first. He said, come into the saloon and he would go with me to the depot. Saw two in there. I drank whiskey. I said I would have whiskey. Douglass and I were at the counter. The other man was playing with dice. Douglass and the other man were at the counter. Nothing was said about shaking for drinks. I took dice in my hand and shook twice. Douglass showed me ; it was after I drank ; before, I did not shake. I shook only twice. I stood at the counter a few minutes ; took cigar at the counter, shook dice between the drinks. I think I shook dice after the drinks. Something was said about betting. Douglass wanted me to bet who would win. Did not shake on the first drinks, on which the other two had put up five dollars soon after I entered the saloon. I never before that day took dice in my hand. Don't know who won the five dollars."

McGrath, on cross-examination, further testified : " Jenks came out to Newton and wanted me to settle. This was three weeks ago. He said he would be back in the evening, but he did not come. I did not then tell him he was there. I did not intimate to him that I had seen him before. He came there as though he was that man's (Douglass's) friend. When I saw Jenks at West Newton I did not recognize him as the other man, but now I think I do."

The defendants offered no evidence ; and requested the judge to instruct the jury as follows: " 1. Under this indictment, a joint larceny by both defendants must be proved beyond a reasonable doubt. 2. One prisoner is not criminally liable for the acts, or conduct, or words of the other, unless there is evidence satisfying the jury that there was a combination of the two to commit the offence ; and then only acts or words in pursuance of the common conspiracy are admissible in evidence to influence the judgment. 3. Conspiracy must be established and proved like any other fact. It must not be assumed, but proved, and proved beyond a reasonable doubt. 4. Under this indictment, bank-bills are not admissible. The presumption is that the grand jury did not intend to charge larceny of bank-bills. 5. On the testimony of McGrath, this indictment cannot be sustained, and the jury should acquit the defendants. 6. Douglass's statement to the officer, Knox, about Jenks having the money, is not competent against Jenks for any purpose, and should be entirely disregarded by the jury in considering the case of Jenks. 7. The prosecution cannot, under this indictment, try any charge of violation of the Pub. Sts. c. 203, § 65. 8. Under that statute, the burden is upon the government to prove a fraudulent and deceitful game. If the game is fair and honest, the offence is not committed. 9. If the jury, on the evidence, find that McGrath engaged in a game of chance, and lost in the ordinary practice of the game, no offence was committed. 10. If the jury believe that the defendants, or either of them, believing himself, by the result of the game, honestly and fairly entitled to the money, and took it under the claim of right, he or they cannot be convicted."

The judge gave the second, third, sixth, seventh, eighth, ninth, and tenth instructions requested ; refused to give the first, fourth,

and fifth; and, after reading to the jury the Pub. Sts. *c.* 203, § 65, further instructed them, that this was not a prosecution or an indictment under that section, and if they found that the offence committed was, in fact, such as is described in that section, they must acquit the defendants; that if McGrath took out of his pocket fifty dollars, laid a part on the bar within his reach and control, and kept a part in his hand with a view to bet on a game thereafter to be played, and, before the game was played or the money put up, the defendants, against the will of McGrath, or without his consent, and with the felonious intent to deprive the owner of it and appropriate it to their own use, fraudulently took it and ran away with it, the offence of larceny was committed.

The jury returned a verdict of guilty against both defendants; and they alleged exceptions.

*D. F. Crane & G. W. Searle*, for the defendants.

*H. N. Shepard*, Assistant Attorney General, for the Commonwealth.

W. ALLEN, J. 1. It was a sufficient reason for overruling the motion to quash, that it did not specify the objections relied on. Pub. Sts. *c.* 214, § 25. *Commonwealth* v. *Murray*, 135 Mass. 530. But the indictment was sufficient. *Commonwealth* v. *Collins*, *ante*, 483.

2. It is matter of elementary learning, that, upon an indictment against several for larceny, one may be convicted. See *Commonwealth* v. *Bakeman*, 131 Mass. 577. If it were otherwise, it is difficult to see how the defendants could have been harmed by the ruling, as both were convicted.

3. The indictment was sustained by proof of a larceny of bank-bills. *Commonwealth* v. *Butts*, 124 Mass. 449, and cases cited. *Commonwealth* v. *Gallagher*, 126 Mass. 54. *Commonwealth* v. *Brettun*, 100 Mass. 206. *Commonwealth* v. *Collins, ubi supra*.

4. The testimony of McGrath tended to prove the commission of a larceny, and not of the offence described in the Pub. Sts. *c.* 203, § 65, of fraudulently obtaining property by a game, device, or sleight of hand. It is no defence to a charge of larceny, that the defendant, by a game or device, procured the production of the property so that he might steal it. The court properly refused the ruling asked.          *Exceptions overruled.*