## COMMONWEALTH *vs.* PAUL MANNOS & another.

Middlesex.    February 2, 1942. — February 25, 1942.

Present: FIELD, C.J., QUA, COX, & RONAN, JJ.

*Bribery. Public Officer. Municipal Corporations*, Officers and agents. *Accessory and Principal. Conspiracy. Pleading, Criminal*, Bill of particulars. *Practice, Criminal*, Venue, Sentence. *Evidence*, Conspiracy, Competency, Relevancy and materiality, Cumulative.

Bills of particulars, filed by the Commonwealth respecting charges against two defendants in indictments for requesting and accepting bribes from named persons in violation of § 8 of G. L. (Ter. Ed.) c. 268 and in an indictment charging a conspiracy to accept bribes from persons unknown, were sufficient in that they stated that the defendants corruptly requested gratuities from persons named; that the consideration for the gratuities was the approval by one defendant, who was mayor of a city, of certain specifically enumerated contracts with certain named persons; that the gratuity which was accepted by the mayor on or about the date alleged in each count was money, the exact amount of which the Commonwealth was unable to state; and also stated as to each gratuity the name of the person who accepted it and the place where it was accepted; and motions for further particulars properly were denied.

The granting of petitions of the Commonwealth under § 57A of G. L. (Ter. Ed.) c. 277 for leave to proceed with the trial of several indictments against two defendants, returned in the county of Middlesex and charging soliciting and receiving bribes, disclosed no error where it appeared that, in presenting the petitions, the district attorney stated that he would show that one defendant, mayor of a city in that county, participated in all the payments of bribes and was a party to the entire transaction; that, while he could show that some payments were made directly to the mayor, he was unable to state which payments were so made and which were made to the other defendant; that, while the evidence would show that the payments to the other defendant were made in Suffolk County, he was in doubt as to the places where that defendant transmitted those payments to the mayor.

No error appeared in the denial of motions, by one of the defendants at the trial of indictments charging two defendants with soliciting and accepting bribes and with conspiracy to accept bribes, to strike out and instruct the jury to disregard as to him evidence of alleged payments to the other defendant and of declarations by him after a certain date, stated in testimony as a date when the defendants ceased their unlawful relations, where there was evidence that such relations had not ceased on that date:

A conviction of a private citizen jointly indicted with a municipal officer for soliciting and accepting bribes in violation of § 8 of G. L. (Ter. Ed.) c. 268 was warranted upon evidence that, in arranging for the payment of the bribes by certain persons, in making collections from them and in turning what was collected over to the municipal officer, the private citizen personally participated as a principal in every essential step of the crime; but as to certain payments for which he arranged and in which he did not otherwise participate, he could not properly be found to have been more than an accessory before the fact to the officer's acceptance of such bribe, and as to them conviction of him under such indictment for accepting a bribe was improper.

A private citizen properly might be convicted of conspiring with a municipal officer to accept bribes from third persons in violation of G. L. (Ter. Ed.) c. 268, § 8.

Conviction under an indictment and bill of particulars, charging violations of § 8 of G. L. (Ter. Ed.) c. 268 by a mayor of a city and a confederate, were warranted by evidence that, before approval by the mayor of contracts for employment of certain persons to do work for the city, corrupt bargains had been made with them whereby, in consideration of such approval, they were to pay to the mayor certain portions of sums later to be received by them under the contracts, and that such sums afterwards were paid.

Evidence of certain directions given at about the same time separately by a municipal officer and by a private citizen, which tended to show the relationship of the two to each other and as to certain funds that they solicited and received from persons engaged in the erection of municipal buildings, was admissible at their trial upon a joint indictment charging them with receiving bribes in violation of § 8 of G. L. (Ter. Ed.) c. 268, and with conspiracy to accept such bribes.

A single sentence imposed after verdicts of guilty upon all of several counts of an indictment must be reversed where this court adjudged that the verdicts on certain counts were not warranted.


INDICTMENTS, found and returned on December 19, 1940. The indictments were tried before *Williams*, J.

*F. T. Leahy*, (*G. I. Kellaher* with him,) for the defendant Lyons.

*H. F. Callahan*, for the defendant Mannos.

*R. F. Bradford*, District Attorney, for the Commonwealth.

RONAN, J. These defendants have been found guilty of requesting and accepting bribes from architects engaged in certain construction work for the city of Cambridge, after a trial upon four indictments charging them with soliciting and receiving bribes in the first and third from one Greco,

in the second from one McLaughlin, and in the fourth from one Varney. They were also found guilty of a conspiracy to accept bribes from persons unknown. They have appealed in the bribery cases and have filed a bill of exceptions in the conspiracy case.

The defendant Lyons was elected mayor of the city of Cambridge in 1937 for a two-year term commencing January 1, 1938, and in 1939 he was reëlected for a further term which ended on January 1, 1942. The defendants Mannos and Lyons were close political friends. Mannos was his political manager in 1935, when Lyons made an unsuccessful attempt to be elected mayor, and again in 1937. Mannos contributed generously to Lyons's campaigns in those years and also collected considerable funds for expenses incurred in each of these campaigns. He was interested in the election of Lyons in 1939 but he was not so active as in the previous years. They frequently lunched together, and made various trips to New York. Their relations were friendly and intimate. When Lyons first took office there was genuine need of repairs to some of the municipal buildings and for the construction of new buildings. The matter had been publicly discussed and it was generally known that a building program would be undertaken if suitable financial arrangements could be made.

Greco testified that he told Lyons early in January, 1938, that he would like to be considered if the city was to do any construction work. He then saw the defendant Mannos at the latter's office in Boston, who told him that he would see what he could do. Mannos asked him if he would be willing to contribute a part of his commission to the campaign and the witness said he would. He again saw Mannos in March, who told him to see Lyons regarding the remodelling of a fire station. He saw the mayor in reference to the fire station and in accordance with the request of the mayor he made an investigation and filed a report with him. On April 23, 1938, the witness executed a written contract in behalf of his firm with the city to act as architect on this job. In the spring of 1938 he saw Mannos from time to time and inquired for work as he had

heard that the construction of other buildings was contemplated. He then brought to the mayor a representative of the Federal government who was engaged in seeking appropriate projects for the expenditure of P. W. A. funds. At this conference the mayor enumerated eight projects which he desired to have done. In answer to a question of this representative as to who the architects were to be, the mayor named Beal for the tuberculosis hospital, Shaw for the Webster School, McLaughlin for the library and the maternity hospital, and the witness for the remaining four projects. Thereafter, Greco's firm executed three written contracts with the city for the construction of a garage, an incinerator, and an addition to the high and latin school, respectively. Lyons executed these contracts in behalf of the city. The outdoor parking project, the fourth piece of work which the mayor had mentioned, was never undertaken. The Kimball Company did the engineering work on the school, as that company generally performed such services for Greco's firm. Mannos had suggested hiring that company. Mannos told Greco that he would like to have Cleverdon, Varney & Pike have the engineering work on the incinerator and Greco hired them. Prior to securing these contracts Greco was told by Mannos that his contribution to the campaign fund would be one third. As he received payments from the city he went to Mannos's office and paid him in cash one third of the amount. He made numerous payments commencing with July 19, 1938, and ending with August, 1940. Seven of these payments were made to Lyons, two were to either Lyons or Mannos, and all the other payments were to Mannos. After he had made the first five payments to Mannos, Lyons told him in March, 1939, that "from now on I was to give the money to him, and not to Mannos." He then commenced to make the payments to Lyons. The payments to Mannos were made in Boston and those to Lyons were made in Cambridge. He paid Mannos about $13,000 and Lyons about $8,000. Payments were made by Greco as payments were received by his firm from the city.

McLaughlin testified that he saw Mannos in April, 1938,

in reference to securing work. Mannos told him that the various projects had been allotted, that the witness was late in coming to see him, but that there was the possibility of a hospital building being considered. Mannos said that if he succeeded in securing the job for McLaughlin he would expect to receive one third of the amount that the witness received from the city. The witness agreed to that arrangement. In June, 1938, in answer to a telephone call he met the mayor, who inquired as to the probable cost of a maternity hospital building and arranged for him to meet with a physician in order to secure the details and determine whether the amount of $300,000, which the mayor had in mind, would be sufficient. After talking with this physician and the board of trustees of the hospital, he prepared preliminary plans which were submitted to the Federal public works administrator. The firm of which he was a member executed a contract with the city on August 30, 1938, to furnish architectural services on the maternity hospital job. He also prepared plans for a library building and on August 11, 1938, his firm made a written contract with the city for this work. Both contracts were signed by Lyons in behalf of the city. On the hospital work he employed The Kimball Company to do the engineering services in reference to the heating, ventilating and electrical work. Mannos told McLaughlin in April, 1939, that he was to collect and pay to him the payments that were to be paid to Mannos by those doing the engineering work, and thereafter he paid to Mannos whatever he collected from Kimball. One third of the amounts that he received from the city on both of these projects was paid by him to Mannos in Boston starting on or about November 14, 1938, and continuing until February 11, 1940, and amounted to approximately $8,500.

Kimball, a member of a firm which was engaged in mechanical engineering in laying out heating, lighting and plumbing systems in buildings, and which did such work on the tuberculosis hospital, the high and latin school and the maternity hospital, testified that the mayor told him in February, 1938, when he asked him if his firm could have

some of the work that was to be done by the city, that his firm was acceptable to him but "that we had to kick back one third of our commission to do the work." He told Lyons that would be all right. In the summer of 1938 he received a telephone call from Beal, the architect on the tuberculosis hospital building, and did the engineering work on that building. He was hired by McLaughlin, the architect, to do similar work on the maternity hospital building. After he got the first payment on each of these jobs, the mayor telephoned to bring the money to him, which he did and paid Lyons $1,808.40 in cash; this was one third of the amount the witness had received from the architects. In the summer of 1938 Greco hired him to do the engineering work on the school job. Shortly after he had made the payment to Lyons the latter told him that thereafter he wanted the business taken care of through the architects. The jury could find that Kimball thereafter paid back in cash to the architects, Greco and McLaughlin, one third of the amount he had received from them, and that this money from Kimball was included in the payments made by Greco to one or the other of the defendants and those made by McLaughlin to Mannos.

One Collins, a representative of Cleverdon, Varney & Pike, consulting engineers, testified that he visited Mannos in February or March, 1938, seeking work for his firm, and told Mannos that he would be willing to pay him if Mannos succeeded in obtaining the contract to furnish architectural services on the incinerator job for his firm. Later, Mannos told him that the architect on that work was Greco. The witness then endeavored to get the engineering part of the architect's work but later advised Mannos that he was unable to make any progress with Greco. Mannos said he would speak to Greco. Mannos afterwards told the witness "that the matter could be arranged with Greco if we would accept two per cent for our fee and two per cent for him and two per cent for Greco." The witness accepted the job on that basis. His firm then got the engineering work on the incinerator building. He also talked to Mannos about repair work on bridges and it was agreed that Mannos

should be paid a third of the fee. Later his firm executed a contract with the city on November 14, 1938, in reference to this bridge work. Lyons executed this contract in behalf of the city.

Varney, a member of the firm of Cleverdon, Varney & Pike, testified that he made various payments in cash to Mannos when he received payments from Greco for services performed by his firm on the incinerator building and also when payments were made by the city for the work done on the bridges, except on the last payment. He paid Mannos $4,255 from what his firm received on the incinerator job and $3,464.65 from the amount received from the city on the bridge contract. Varney saw Lyons in June, 1940, in an effort to secure the repair of other bridges. He told Lyons that he had contributed $500 to his primary and election campaigns in 1939 by paying this sum to Mannos. Lyons said that he had received it, and he then advised the witness not to have anything more to do with Mannos and told him that he and Mannos were not on friendly terms.

The city charter required the approval of the mayor upon all contracts involving an expenditure of more than $500. The contracts of the city with Beal, McLaughlin and Greco provided for the selection and payment of engineering services, and also provided that those selected were to be approved by the mayor and the superintendent of public buildings of the city. There was evidence that Lyons approved the selection of Kimball's firm to furnish engineering services. Lyons knew that Varney's firm were the engineers on the incinerator job. He made no objection to this firm doing that work. Mannos had asked him to give Varney some work. Lyons knew when he executed the contracts with Greco, McLaughlin and Varney on the bridge work that Mannos would get a commission on what they collected from the city. If Lyons did not expressly approve the selection of Varney's firm for the engineering work on the incinerator building, the evidence was sufficient to show tacit approval by him. While Kimball and Varney had no contracts directly with the city, yet they

were engaged in performing work for the city and secured the work through an arrangement made, in Kimball's case directly with the mayor, and in Varney's case with Mannos as agent of the mayor, to pay a part of their commission.

The first assignment of error of each of the defendants is to the denial of his motion to require the Commonwealth to file particulars in the bribery cases, and each also excepted to a denial of a similar motion in the conspiracy case. All these motions were filed after the Commonwealth had furnished particulars in response to previous motions filed by the defendants. The counts in the bribery indictments followed the words of the statute. Mannos filed a motion seeking particulars upon fifteen different matters upon each count, and Lyons filed a similar motion asking for specifications upon five different matters relative to each count. The Commonwealth furnished particulars substantially the same as to each count except for a difference in dates, amounts and names of individuals paid, which stated that the defendants corruptly requested a gratuity from a person named; that the consideration for the gratuity was the approval by Lyons, as mayor of Cambridge, of certain contracts, which were specifically enumerated, with certain persons who were named; and that the gratuity which was accepted by Lyons on or about the date alleged in the count was money the exact amount of which the Commonwealth was unable to state. The particulars also gave the name of the person who accepted the gratuity and the place where it was accepted. In the conspiracy case Mannos filed a motion to have the Commonwealth furnish particulars respecting fifty-one matters, and Lyons filed a motion for such particulars on seven matters. The Commonwealth furnished a bill of particulars setting forth specifications to the same extent as it did in the bribery cases. Thereafter motions of both defendants to require the Commonwealth to file particulars in all these cases were denied.

We are of opinion that the allegations in each of these counts, aided by the specifications that related thereto, were sufficient to safeguard the constitutional rights of the

defendants and furnished them with reasonable knowledge of the nature and grounds of the crimes charged which would enable them to understand fully the offence with which they were accused and permit them to prepare their defences. There was no error in the denial of these motions. *Commonwealth* v. *Anderson,* 245 Mass. 177. *Commonwealth* v. *Randall,* 260 Mass. 303. *Commonwealth* v. *St. John,* 261 Mass. 510. *Commonwealth* v. *Lombardo,* 271 Mass. 41. *Commonwealth* v. *Bartolini,* 299 Mass. 503. *Commonwealth* v. *Martin,* 304 Mass. 320. *Dolan* v. *Commonwealth,* 304 Mass. 325.

The second assignment of error filed by each defendant attacks the ruling of the judge granting petitions of the Commonwealth for leave to proceed under G. L. (Ter. Ed.) c. 277, § 57A, in the trial of the four bribery indictments. These petitions stated that the district attorney was in doubt from the evidence in his possession whether the crimes alleged were committed within the county or the territorial jurisdiction of the court. Another aspect of the same point is raised by the fourth assignment of error of Mannos, which was based upon the refusal of the court to grant his request that upon all the evidence he could not be convicted for requesting or accepting a gratuity as the court was without jurisdiction; by his fifth assignment of error, attacking the refusal of the court to direct a verdict of not guilty because it was not proved that he had committed any crime within the territorial limits of Middlesex County; by his tenth assignment of error, assailing the denial of his motion in arrest of judgment which stated that there was no evidence that he had requested or accepted a gratuity within said county; and by his eleventh assignment of error, which is based upon the denial of his motion for a new trial, one of the grounds of which was similar to that stated in the motion to arrest judgment. The third assignment of error of the defendant Lyons is to the denial of his motion for a directed verdict, one of the grounds of which was that there was no evidence that any payments were made to him in Middlesex County.

The statute, G. L. (Ter. Ed.) c. 277, § 57A, provides

that a defendant shall not be discharged for want of jurisdiction where the evidence discloses that the crime was committed without the county or territorial jurisdiction of the court, if the Attorney General or the district attorney, before the trial, petitions the court for leave to proceed, stating that he is in doubt from the evidence in his possession as to whether the crime was committed in the county or the territorial jurisdiction of the court, and the judge after a hearing orders the trial to proceed. The Legislature was undoubtedly authorized to regulate the place of trial of this particular class of cases where the place of the crime might be shown at the trial to be outside the county or the territorial jurisdiction of the court. The statute deals with the venue and not with jurisdiction. See *Paige* v. *Sinclair*, 237 Mass. 482. The purpose of the statute is similar to that which provides for the trial of capital cases where the mortal blow is given in one county and death occurs in another, and to the statute fixing venue where crimes are committed on or within a certain distance from the boundaries of a county. *Commonwealth* v. *Parker*, 2 Pick. 550. *Commonwealth* v. *Macloon*, 101 Mass. 1. *Commonwealth* v. *Costley*, 118 Mass. 1. *Commonwealth* v. *Matthews*, 167 Mass. 173. *Commonwealth* v. *Dorr*, 216 Mass. 314. *Commonwealth* v. *Knowlton*, 265 Mass. 382.

In the instant case the district attorney stated that he would show that Lyons not only participated in all the payments mentioned in the various counts of the four bribery indictments but that he was a party to the entire transaction; that, while he could show that some payments were made directly to Lyons, he was unable to state which payments were made to Lyons and which were made to Mannos; that, while the evidence would show that the payments to Mannos were made in Boston, he was in doubt as to the places where Mannos transmitted these payments to Lyons. The defendants contend that this statement of the district attorney was insufficient ground upon which to allow the petitions and that the receipt of bribes by Mannos as agent of Lyons occurred in Boston where Mannos accepted the bribes. But the district attorney did not state that Mannos

might not have acted otherwise than as agent of Lyons. If Mannos could be found to be merely the agent of those who gave him the bribes for the purpose of delivering them to Lyons, the acceptance of them by the latter would not occur until he had received them from Mannos, and the place of such delivery would be the place where Lyons violated the statute by accepting the bribes. Indeed, one of the defendants in his brief now contends that Mannos could be found to be the agent of those who gave the bribes. In any event, if, as the district attorney stated, both defendants were participants in all the offences charged, then the receipts of bribes were integral parts of a plan upon which the defendants had embarked and which the court could find was the underlying purpose of the defendants' conduct which apparently occurred in both counties. The indictments charged that the defendants accepted these bribes in Cambridge while the particulars showed that some were accepted in Boston and others in Cambridge. The allowance of the petitions imports a finding by the judge of all the facts necessary to support his action. Enough appears from statements of the district attorney to warrant the finding. *Commonwealth* v. *Gedzium,* 259 Mass. 453. *Fogg* v. *First National Bank of Boston,* 268 Mass. 25. *Commonwealth* v. *Millen,* 290 Mass. 406.

The third assignment of error of Mannos is to the denial by the judge of his motion to strike out and instruct the jury to disregard all evidence of alleged payments to and alleged declarations of Lyons made after March, 1940, as against the defendant Mannos. This defendant contends that, if he was an agent of Lyons or if there ever was a conspiracy, then the agency and conspiracy ended in March, 1940. There was no evidence of any payments of money to Mannos during or after March, 1940. There was testimony that any friendship and association between these defendants had terminated in March, 1940. But there was also testimony that Greco, after making five payments to Mannos, was told by Lyons in March, 1939, that in the future he was to pay Lyons and not Mannos; that on March 20, 1939, he made his first payment to Lyons; that

he received about $1,900 from Kimball in July, 1939, and Mannos demanded that it be paid to him; that Greco told him that he (Greco) was supposed to pay it to the mayor but Mannos said "No, you are supposed to give it to me," and the witness, not being able to find the mayor, paid this amount to Mannos; that he paid either Mannos or Lyons in August, 1939, and December, 1939; that he last paid Mannos in January, 1940, and thereafter all the remaining payments, the last of which occurred in August, 1940, were made to Lyons. Greco further testified that Lyons told him it would be all right to make the January, 1940, payment to Mannos; that Mannos came into his office in July, 1940, and said that he was trying to find Lyons in order to get some money; that he was going to sue the mayor because he had collected money that "should go to him" and that he was going to bring suit "if he had to go to prison and take the mayor with him." Mannos denied that that conversation took place, but testified that he told Greco that Greco owed him a considerable amount of money and that he was willing to settle for $3,000 but that Greco refused to pay him.

The declarations and actions of one who had been a coconspirator are not admissible against another coconspirator if such declarations and acts occurred after the conspiracy had terminated. *Commonwealth* v. *McDermott*, 255 Mass. 575. *Commonwealth* v. *Snyder*, 282 Mass. 401. *Logan* v. *United States*, 144 U. S. 263. *Brown* v. *United States*, 150 U. S. 93. The jury, however, were not required to find that the conspiracy had ended in March, 1940. They could find that at and after that time Lyons was receiving payments from Greco as a result of the agreement made between Mannos and Greco before Greco had obtained any contract from the city, and that Mannos was claiming as late as July, 1940, that all or part of these payments made by Greco to Lyons belonged to him or, according to the testimony of Mannos, that he was at the last mentioned date endeavoring to collect from Greco $3,000 which he claimed Greco owed him in accordance with the agreement we have just mentioned. The jury could find

that the object of the conspiracy had not been fully accomplished and that while there may have been a disagreement between Lyons and Mannos which resulted in Lyons making the collections, yet they could find that as late as July 1, 1940, Mannos had not abandoned the conspiracy but was looking to Lyons to be reimbursed out of the collections Lyons had made, and was also insisting that Greco pay him in accordance with the corrupt agreement they had made prior to the time Greco had been awarded any contracts by the city. There was evidence that this corrupt agreement was still operative; that it was part of a scheme employed by both defendants to secure funds from architects; and that the efforts of Mannos to secure payments from Greco and thus to secure the fruits of the unlawful enterprise in which the defendants were engaged were an attempt by Mannos to do an act in furtherance of the conspiracy. The jury were warranted in finding that the conspiracy continued although Mannos disputed the right of Lyons to collect. The defendant Mannos was not entitled to a ruling that the conspiracy ended in March, 1940. The issue was one of fact. Moreover, the jury were instructed that the acts and declarations of one were not evidence against the other unless they were made during the pendency of the conspiracy and in furtherance of its object, and the conduct of one after the conspiracy was ended was not to be considered against the other. There was no error in denying the motion to strike out. *Commonwealth v. Scott,* 123 Mass. 222. *Commonwealth v. Stuart,* 207 Mass. 563. *United States v. Kissel,* 218 U. S. 601. *Hyde v. United States,* 225 U. S. 347. *Brown v. Elliott,* 225 U. S. 392. *United States v. Borden Co.* 308 U. S. 188. *United States v. Beck,* 118 Fed. (2d) 178. *United States v. Benjamin,* 120 Fed. (2d) 521.

There was no error in denying the motion in so far as it was directed to the bribery indictments. The acts and declarations of Lyons, at least up to July, 1940, were competent against Mannos for reasons already stated. Consequently, there was no error in denying the request to strike out all evidence of the acts and declarations of Lyons that

occurred after March, 1940. In general, the situation is somewhat analogous to an exception taken to the admission of evidence that was competent in one of the cases then on trial, *Commonwealth* v. *Connolly*, 308 Mass. 481, or to an exception to the refusal to direct a verdict generally for a defendant where there was evidence to support one of the counts in the declaration. *Gifford* v. *Eastman*, 251 Mass. 520.

The fifth, ninth and eleventh assignments of error by Mannos and various exceptions taken by this defendant upon rulings made as to the sufficiency of the indictment charging conspiracy and the evidence introduced in support thereof raise the issues whether a private citizen can be found guilty upon a joint indictment charging him and a municipal officer with the offence of requesting and accepting bribes, and whether such a citizen can be found guilty of a conspiracy with a municipal officer to accept bribes under an agreement or understanding that the opinion or judgment of the officer would be given in a particular manner upon a matter that would be brought before him in his official capacity.

The statute, G. L. (Ter. Ed.) c. 268, § 8, provides that "A legislative, executive, judicial, county or municipal officer who corruptly requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to him, under an agreement or with an understanding that his vote, opinion or judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity" shall be punished. The defendants were joined in the four bribery indictments, charging each with severally and jointly violating this statute. *Commonwealth* v. *Griffin*, 3 Cush. 523. *Commonwealth* v. *Murphy*, 2 Gray, 510. *Commonwealth* v. *Tryon*, 99 Mass. 442. *Commonwealth* v. *Weatherhead*, 110 Mass. 175. *Commonwealth* v. *Jenks*, 138 Mass. 484. *Commonwealth* v. *Madeiros*, 255 Mass. 304. Upon a joint indictment charging an offence not requiring joint action as conspiracy or riot, it is the general rule that one or more defendants may be convicted.

*Commonwealth* v. *Bakeman*, 131 Mass. 577.  *Commonwealth* v. *Jenks*, 138 Mass. 484.  *Commonwealth* v. *Madeiros*, 255 Mass. 304.

The evidence was sufficient to warrant a finding that Mannos was acting as the agent of Lyons.  The latter would be criminally responsible as a principal for the acts of Mannos, and he could be charged with the actual commission of the offence or with its commission through an agent. *Dolan* v. *Commonwealth*, 304 Mass. 325.  *Commonwealth* v. *Connolly*, 308 Mass. 481.  The actual perpetration of a crime through a guilty agent ordinarily constitutes the latter a principal.  But we are here dealing with a statute that expressly prohibits public officers from requesting or accepting bribes.  Mannos was not a public officer but it does not follow that, if he participated with Lyons in the solicitation and receipt of bribes by the latter, he could not be found guilty of an infraction of the statute.  There are numerous instances where one, who is incapable of committing an offence as a principal in what has been sometimes called the first degree, has been convicted as a principal in what has been sometimes called the second degree or as an accessory before the fact.  A husband who is present assisting another to ravish his wife or a woman who is present aiding a man to ravish a woman has been convicted as a principal in the second degree for rape.  *Rex* v. *Audley*, 3 How. St. Tr. 401.  *Rex* v. *Gray*, 7 C. & P. 164.  *Rex* v. *Folkes*, 1 Moody C. C. 354.  *People* v. *Chapman*, 62 Mich. 280.  *State* v. *Dowell*, 106 N. C. 722.  *People* v. *Meli*, 193 N. Y. Sup. 365.  See *Law* v. *Commonwealth*, 75 Va. 885.  Indeed in this Commonwealth a conviction, in such circumstances, may be had upon an indictment charging all the participants as principals.  *Commonwealth* v. *Fogerty*, 8 Gray, 489.  *Commonwealth* v. *Murphy*, 2 Allen, 163.  It is a general rule in criminal law that one who aids and assists another person to commit an offence which only such other person can commit may be equally guilty with the latter as a principal or as an accessory before the fact, depending upon the evidence showing his relation to the actual commission of the crime;  or as principal to such

other person in jurisdictions where the distinction between principals and accessories has been abolished by statute. *United States* v. *Van Schaick,* 134 Fed. 592. *Gibbs* v. *State,* 37 Ariz. 273. *People* v. *Zimmer,* 23 Cal. App. (2d) 581. *State* v. *Burns,* 82 Conn. 213. *Boggus* v. *State,* 34 Ga. 275. *Bishop* v. *State,* 118 Ga. 799. *Commonwealth* v. *Carter,* 94 Ky. 527. *State* v. *Nahoum,* 172 La. 83. *Strang* v. *People,* 24 Mich. 1. *Mills* v. *State,* 53 Neb. 263. *State* v. *Warady,* 49 Vroom, 687. *State* v. *Marshall,* 97 N. J. L. 10, 12. *People* v. *McKane,* 143 N. Y. 455. *Thomas* v. *State,* 45 Tex. Cr. 81. *Adkins* v. *Commonwealth,* 175 Va. 590.

This general rule has been applied in cases where private citizens have been convicted of soliciting and receiving bribes, where they have been shown to have acted either as principals in the second degree so called or as accessories before the fact to the receipt of bribes by the officer. *People* v. *Anderson,* 75 Cal. App. 365. *State* v. *Rowe,* 104 Iowa, 323. *Capshaw* v. *State,* 69 Okla. Cr. 440. *Wilkins* v. *State,* 70 Okla. Cr. 1.

In this Commonwealth, the distinction between guilt as a principal and guilt as an accessory before the fact has always been recognized. G. L. (Ter. Ed.) c. 274, §§ 2, 3. *Commonwealth* v. *Knapp,* 9 Pick. 496. *Commonwealth* v. *Adams,* 127 Mass. 15. *Commonwealth* v. *Asherowski,* 196 Mass. 342. *Commonwealth* v. *Kaplan,* 238 Mass. 250. *Commonwealth* v. *Donoghue,* 266 Mass. 391. *Commonwealth* v. *DiStasio,* 297 Mass. 347. *Commonwealth* v. *Bloomberg,* 302 Mass. 349. One who has advised, aided or abetted another to commit a felony, and is absent when the crime is committed or if present is not acting, may be found to be an accessory before the fact, but one who is present at the commission of a felony and is aiding and assisting the one who is actually committing the offence is a principal. *Commonwealth* v. *Knapp,* 9 Pick. 496. *Commonwealth* v. *Merrick,* 255 Mass. 510. *Commonwealth* v. *DiStasio,* 297 Mass. 347. We are of opinion that, in arranging for the payment of bribes from the architects and engineers, in making the collections from them, and in turning what was collected

over to Lyons, Mannos personally participated in every essential step and must be considered as a principal. In those instances, he was properly charged and convicted of bribery as a principal. *Commonwealth* v. *Fogerty*, 8 Gray, 489. *Commonwealth* v. *Murphy*, 2 Allen, 163. *Commonwealth* v. *Clune*, 162 Mass. 206. *Commonwealth* v. *Sinclair*, 195 Mass. 100, 110, 111.

Mannos, however, was not present when payments were made to Lyons by Greco. He had inaugurated and was active in carrying out the program which resulted in these payments by Greco to Lyons. Upon the evidence it could hardly be said that he assented to such payments. In any event, the evidence, while sufficient to show that Mannos, in reference to these payments to Lyons, was an accessory before the fact, would not support an indictment charging him as a principal. One cannot be convicted as a principal when all that the evidence proves is that he was an accessory before the fact. *Commonwealth* v. *Roby*, 12 Pick. 496. *Commonwealth* v. *Ponzi*, 256 Mass. 159. *Commonwealth* v. *DiStasio*, 297 Mass. 347.

There was error in not directing a verdict of not guilty for Mannos on counts 3, 13, 14, 15 and 17 of indictment numbered 24540 in which he was charged with accepting bribes from Greco where the evidence shows that payments were made directly by Greco to Lyons. We shall not include those five counts in the subsequent discussion concerning the other assignments of error taken by the defendant Mannos.

Nothing here decided is inconsistent with anything said in *Commonwealth* v. *Connolly*, 308 Mass. 481. The public officer in that case was the only one indicted for bribery. It was in reference to this fact that it was stated at page 489 in the opinion that "no one but a public officer can be a principal" in an indictment drawn under G. L. (Ter. Ed.) c. 268, § 8. The defendant's agent who was referred to in that case as the "bagman" was not joined with the officer on any indictment based upon this statute. The question of joinder did not arise and was not discussed in the opinion, and the issue now raised was not there presented for deci-

sion. The statement that we have quoted was correct in the circumstances in which it was made, but it cannot be extended to a point that was not then before the court. *Eaton* v. *Walker*, 244 Mass. 23. *Rosen* v. *United States Rubber Co.* 268 Mass. 403. *Thibeault* v. *Poole*, 283 Mass. 480.

We next consider the various exceptions taken on a similar ground under the conspiracy indictment. In the main they appear to rest upon the contention that conviction for a conspiracy was not warranted upon the facts alleged or upon the facts as proved. The defendants rely on cases where it has been held that where joint action is required to commit a substantive offence a conviction of a conspiracy will not be sustained that is based upon doing the very acts that are essential to the perpetration of the substantive offence itself. *Gebardi* v. *United States*, 287 U. S. 112. *People* v. *Wellengel*, 98 Colo. 193. The principle illustrated by these decisions is not pertinent. The defendants were not charged with offering or receiving bribes from one to the other. They were tried for a conspiracy to accept bribes from third persons. The accomplishment of the object of such a conspiracy required more than joint action by the defendants. It necessitated the corrupt offering or tendering of bribes to them by third persons. The defendants, however, contend that Mannos being a private citizen was incapable of joining in such a conspiracy. This is an extension of the argument previously advanced that a non-officeholder cannot be convicted of requesting or accepting a bribe. It is sufficient to state that, by the great weight of authority, one may enter into a conspiracy the object of which is the commission of a crime that he alone is not able to commit provided one of the other coconspirators is able to commit such a crime. Power or ability to commit the substantive offence is not necessary in order to convict a private citizen who has joined a conspiracy to accept bribes if a public officer is a party to the said conspiracy. *Commonwealth* v. *Smith*, 163 Mass. 411. *Commonwealth* v. *Downey*, 288 Mass. 147. *United States* v. *Holte*, 236 U. S. 140. *United States* v. *Rabinowich*, 238 U. S. 78. *Downs* v.

*United States,* 3 Fed. (2d) 855. *Farnsworth* v. *Zerbst,* 98 Fed. (2d) 541. *State* v. *Myers,* 36 Idaho, 396. *Gallagher* v. *People,* 211 Ill. 158. *People* v. *McKane,* 143 N. Y. 455. *State* v. *Davis,* 203 N. C. 13. *Capshaw* v. *State,* 69 Okla. Cr. 440. *State* v. *Huegin,* 110 Wis. 189. 74 Am. L. R. 1110. 8 Am. Jur. 896. 11 C. J. S. 857.

The fifth assignment of error of Mannos and the third assignment of error of Lyons are based upon the denial of their motions for directed verdicts. The defendants contend that each count of the indictments for bribery alleges a request for and acceptance of a bribe upon a designated date; that the particulars set forth that the approval of Lyons of certain contracts was the consideration for which the request was made and the money paid; that the date of the request and the date of acceptance of the bribe in every count were all subsequent to the approval of the contracts by Lyons; and that a request for or acceptance of money by either defendant after the contracts had been approved would not constitute bribery. Of course, it is true that the performance of an official act by an officer in accordance with his judgment and discretion and in the absence of any promise or agreement to pay him for such performance would not furnish any ground for a prosecution of the officer for bribery if, after the performance, he requested or accepted a gratuity for what he had already done. *People* v. *Coffey,* 161 Cal. 433. The evidence was sufficient to show that, before Lyons had approved any contracts for their employment by the city, Greco, McLaughlin and Collins had made a corrupt bargain with Mannos, and Kimball had made one with Lyons, whereby, in consideration of the approval by Lyons of contracts of Greco and McLaughlin and the approval of the firm represented by Collins and the firm represented by Kimball for subcontracts, they were to pay one third, and in Collins's case one half, of all the money they received from the city. The counts in the indictments, as aided by the specifications, were based upon the receipt of these payments by either of the defendants. The pleadings, when fairly construed, show payments of bribes in accordance with prior understandings

or agreements that official action would be taken by Lyons. Successive payments subsequent to and as a result of the corrupt agreements are included within the scope of the indictments and the specifications. The Commonwealth was not required to show both a request and an acceptance on the date alleged in the indictment or in the particulars. It could prove either. Proof of the receipt of the bribes was sufficient to constitute the crime charged. The acceptance of each bribe constituted a separate offence. There was no error in refusing to direct verdicts of not guilty. *Commonwealth* v. *Donovan*, 170 Mass. 228. *Commonwealth* v. *Hogan*, 249 Mass. 555. *Commonwealth* v. *Avery*, 301 Mass. 605. *Commonwealth* v. *Connolly*, 308 Mass. 481. *Commonwealth* v. *Galvin*, 310 Mass. 733.

The sixth, seventh and eighth assignments of error of Mannos are based upon the denial of three requests for instructions. The first purported to set forth the rule to determine when an inference is warranted; the second was to the effect that the evidence against Mannos was circumstantial; and the third was that a verdict of guilty would not be warranted in a case depending upon circumstantial evidence unless the evidence was of a certain character. The charge was full, fair and accurate. The jury were clearly instructed that the burden was upon the Commonwealth to prove the charges beyond a reasonable doubt. The Commonwealth had introduced testimony which, if believed, showed the actual receipt of bribes by both defendants. Even if there was no direct evidence of the payment by Mannos to Lyons of any of the money received by the former, the jury could not, in view of the instructions, find that Lyons received any money from Mannos unless they were satisfied to a moral certainty that such a payment had been made. The evidence warranted them in so finding. We think the charge sufficiently covered the specific matters referred to in these requests and that the judge was not required to give them in terms. *Commonwealth* v. *Cobb*, 120 Mass. 356. *Commonwealth* v. *Brown*, 121 Mass. 69. *Commonwealth* v. *Farrell*, 160 Mass. 525. *Commonwealth* v. *Burns*, 167 Mass. 374. *Commonwealth* v. *Uhrig*,

167 Mass. 420. *Holbrook* v. *Seagrave*, 228 Mass. 26. *Leave* v. *Boston Elevated Railway*, 306 Mass. 391, 404.

Lyons saved exceptions to certain rulings upon evidence. Kimball testified that, after he made a payment to Lyons and before July 20, 1939, Lyons told him that he was thereafter to make payments through the architects. Kimball was then permitted to testify, subject to exception, that he paid back to Greco a part of the money which Kimball's firm had earned on the school job. Kimball also testified, subject to exception, that he also turned over money to McLaughlin, the architect on the maternity hospital job where Kimball's firm was employed. The jury could find that, in making these payments to these two architects, Kimball was carrying out the instructions of Lyons. Moreover, McLaughlin testified that Mannos told him in April, 1939, that payments from the engineers would be made through the architects and to notify the engineers to that effect. The jury might consider it significant that similar orders should be made by each defendant at about the same time. They could upon the evidence find that payments from Kimball were included in the payments made by McLaughlin to Mannos and in those made by Greco to one or the other of the defendants. The evidence objected to tended to show the relationship of the two defendants to each other and in the funds that were received from those who were engaged in the erection of these municipal buildings. Concerted action directed toward a common end is competent evidence of a conspiracy. *Commonwealth* v. *Morrison*, 252 Mass. 116. *Commonwealth* v. *Jacobson*, 260 Mass. 311.

The defendant Lyons excepted to the testimony of Beal, the architect on the tuberculosis hospital job, that at a meeting between Mannos and Spinelli, the general contractor on this job, Beal agreed to pay something to Spinelli for helping him to secure the contract for Beal's firm as architects on this job and that the payments were to be credited to an indebtedness owed by Mannos to Spinelli, and that he made payments to Spinelli. Beal so testified before and no exception was taken, and the exceptions were first saved when he later repeated this testimony. There

was no motion to strike out his previous testimony, and as far as the record goes it remained in the case. The admission of evidence that is merely cumulative of evidence already given by a witness does not commonly constitute reversible error. *Morrison* v. *Lawrence,* 186 Mass. 456. *Perivoliotis* v. *Eveleth,* 251 Mass. 444. *Commonwealth* v. *Capalbo,* 308 Mass. 376. Furthermore, if we assume the exception was taken to the previous testimony, the record shows that another indictment numbered 24539, charging the defendants with accepting gratuities from Beal, was also tried with the indictments now in question, and we cannot say that the evidence objected to was not competent in proving the allegations contained in that indictment. It is the duty of an excepting party to show by the record that the ruling excepted to was erroneous in some pertinent particular. That the defendant has here failed to demonstrate. *Commonwealth* v. *Barry,* 115 Mass. 146. *Commonwealth* v. *Rivet,* 205 Mass. 464. *Commonwealth* v. *McIntosh,* 259 Mass. 388. *Commonwealth* v. *Rivers,* 307 Mass. 225.

One Garrod, an inspector for the city of Cambridge called by the defendant Lyons, testified that he remembered a claim presented by the Mannos company for an extra in reference to painting the Webster School. Subject to exception of the defendant Lyons, he was not permitted to testify what the ruling of Lyons was on this claim. The short answer to the exception to this ruling is that Lyons, without objection, testified fully in regard to it and stated that he did not approve this claim as he did not think Mannos was entitled to it. *Walker Ice Co.* v. *American Steel & Wire Co.* 185 Mass. 463. *Currier* v. *MacDonald,* 213 Mass. 363. *Traverse* v. *Wing,* 256 Mass. 320. *Hicks* v. *H. B. Church Truck Service Co.* 259 Mass. 272. *Jacobs* v. *Jacobs,* 281 Mass. 198.

The ninth and tenth assignments of error of the defendant Mannos and his exceptions that attack the ruling denying his motion in arrest of judgment, which alleges that the bribery indictments do not charge any crime known to the law and that the court had no jurisdiction, are not tenable

for reasons already discussed. The eleventh assignment of error of Mannos, the fourth assignment of error of Lyons, and the exception of Mannos, all of which were to the denial of their motions for new trials, show no error of law.

Judgments in the bribery indictments against Mannos are affirmed excepting only as to indictment numbered 24540. On this indictment, the jury found him guilty upon eight counts. But as has been pointed out, there was error in the denial by the judge of his motion to direct verdicts for him upon counts 3, 13, 14, 15 and 17. The verdicts on these counts are set aside. The judge imposed a single sentence upon all these eight counts. *Commonwealth* v. *Foster*, 122 Mass. 317. *Harding* v. *Commonwealth*, 283 Mass. 369. The judgment on this indictment must be reversed as against Mannos. For further disposition of this indictment as to him, see *Commonwealth* v. *Lobel*, 187 Mass. 288; *Commonwealth* v. *Dyer*, 243 Mass. 472, 509, 510; *Commonwealth* v. *McCarthy*, 281 Mass. 253, 261; *Commonwealth* v. *Hull*, 296 Mass. 327, 338. The judgments in all four bribery indictments as to Lyons are affirmed. The exceptions of both defendants in the indictment for conspiracy are overruled.

*So ordered.*